ARNOLD M. HARRIS et al., Respondents, *v.* EDWIN C. WHITE, Appellant.

The words " bet or stakes " in the provision of the statute against racing
(1 R. S. 672, § 55) which prohibits all contests of speed of animals " for
any bet or stakes   *   *   *   or any reward   *   *   *   excepting such as
are by special laws for that purpose expressly allowed," do not include
contests of speed for " purses, prizes, or premiums," as those terms are
now commonly understood.

By a " bet or wager " each party contributes money or some valuable thing
termed the stake, getting a chance to gain a portion of that put in by
the others and taking a chance to lose that contributed by himself.
While a " purse, prize or premium " is ordinarily some valuable thing
offered for a contest, into the strife for which tho person offering it does
not enter.

As to whether the prohibition of said statute against contests of speed for
" a reward to be given to the owner or rider of the animal excelling " in-
cludes the driving of horses for a prize or premium, *quære?*

The exception in said provision of such contests " as are by special laws
for that purpose expressly allowed," is not limited to the time of the
adoption of the statute, but operates to except such contests for bets,
stakes or rewards as are allowed by laws then existing or passed since
that time.

It is not, therefore, unlawful to trot horses for purses, prizes or premiums
at any place where by statute it is authorized, or to contract to drive a
horse in a trotting race at such place.

As there are special statutes and a general statute authorizing the forma-
tion of associations having a right to offer premiums or rewards for such
contests, a party seeking to avoid a contract to pay for services in driving
a horse in trotting races, as coming within the prohibitions of the statute,
must aver and prove that the services were contracted to be rendered
at a place, and in trotting for prizes or rewards not within the exception
of the statute.

Where an exception is contained in the enacting clause of a prohibitory
statute, one who pleads the statute must negative the exception, and
must prove the negative unless the subject-matter of the negative and
the means of proof are peculiarly within the knowledge and power of
the opposite party, or where the negative does not admit of direct proof.

Plaintiffs entered into a contract with defendant, whereby plaintiff E. L.
H. was to drive the horses of defendant during the trotting season of
1875, at such times and places as defendant might desire, in races or con-
tests of speed for purses, prizes or premiums. Defendant's horses had
at that time been entered for races at various places, all of them but one
out of this State. The contract was entered into with these places in

contemplation, and such others as defendant should designate. By the laws of this State races for purses and prizes were authorized at the places so in contemplation in this State. E. L. H. drove defendant's horses at places designated by him in this and other States. In an action to recover the contract price for the services of E. L. H., it appeared that races were authorized under the statutes of the State for purses or prizes at most of the places in this State where defendant's horses were driven, and it did not appear that they were not so authorized at the others. *Held*, that the contract did not stipulate for a driving for a bet, wager or stakes within the prohibition of said statute, and so was not illegal.

Defendant gave evidence of the dealings of the parties in reference to the same horses prior to the contract, to the effect that they connived with the owners or drivers of other horses that there should not in fact be a contest, but that a horse agreed upon should be allowed to come in ahead, and that they bore the expenses of the horses and shared in the winnings, and bought pools and divided the avails. *Held*, that as there was no statutory disapprobation of such feigned races, and as the evidence authorized an inference that these former practices were to be abandoned, and that plaintiffs should be compensated for their services by the payment of a definite sum, a finding that the contract did not contemplate a driving for a bet, wager or stakes, and was not in violation of any statute of this State was justified.

Testimony was given to the effect that defendant made similar secret arrangements with the owners of other horses during the season of 1875, and that plaintiff drove by the order of defendant so as to make it sure to those in the plot which horse would win. *Held*, that this was not riding or driving for a bet, wager or stakes; and, while fraudulent and wrongful, was not statutory wrong-doing.

Testimony was also given tending to show that after such secret arrangement had been made, defendant and E. L. H. bought pools and gained thereby. *Held*, that it was not so conclusive that this was in contemplation of the parties as to make it plain that a finding that it was not was erroneous.

*It seems* that the policy of the statute of 1877 (chap. 178, Laws of 1877) prohibiting the selling of pools, is against the buying as well as the selling of pools.

It appeared that defendant paid entrance fees for his horses. *Held*, that this was not a staking of so much of his money on the result, as the entrance fee did not specifically make up the purse or premium trotted for.

As to whether the courts of a State, in the absence of proof and allegations to the contrary, are required to presume that the statute laws of another State are like those of their own State, *quære?*

Such a presumption will not be made of a statute imposing a penalty or forfeiture

The courts of this State will not take judicial notice of any laws of another State not according to the common law.

Accordingly, *held*, that as it was not illegal at common law to make a bet or wager on the result of a horse race, an agreement to drive a horse in a contest of speed for a wager or stakes, or for a purse, prize or premium in another State was not *prima facie* illegal or against the policy of this State.

(Argued June 3, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*P. C. Williams* for appellant. The circumstances show the agreement contemplated driving the horses for bets or wagers. (*Gibbons* v. *Gouverneur*, 1 Denio, 170–3; 1 R. S. 662, § 8.) The driving for bets or wagers aforesaid was in violation of a statute of this State. (1 R. S. 672, § 55; *Ruckman* v. *Pitcher*, 1 N. Y. 395; 1 Denio, 176.) Where an act is prohibited by statute or public policy, all contracts for, or having for their object, or contemplating its performance are void, although the statute is only prohibitory in its terms, and the court will not lend its aid to enforce the same. (*Tracy* v. *Talmage*, 14 N. Y. 179; *Gray* v. *Hook*, 4 id. 455; *Smith* v. *City of Albany*, 61 id. 444; *Collier* v. *Munn*, 41 id. 143; *Hull* v. *Ruggles*, 56 id. 424–8; *Mullaly* v. *New York*, 62 id. 636; *Arnot* v. *Pittston, etc., Coal Co.*, 68 id. 558; *Beman* v. *Tugnot*, 5 Sandf. 153; *Morgan* v. *Groff*, 5 Denio, 364; *Parton* v. *Plankroad Co.*, 17 Barb. 397; *Bell* v. *Quin*, 2 Sandf. 146; *Bank* v. *Lamb*, 26 Barb. 595; *Pepper* v. *Height*, 20 id. 429; *Jackson* v. *Walker*, 5 Hill, 27; *Best* v. *Banter*, 29 How. 489; *Hall* v. *Bergen*, 19 Barb. 122; *Hook* v. *Gray*, 6 id. 397; *Sanderson* v. *Goodrich*, 46 id. 616; *Hunt* v. *Knickerbocker*, 5 Johns. 335; *Nellis* v. *Clark*, 4 Hill, 434; *Ruckman* v. *Pitcher*, 1 N. Y. 392; *Graves* v. *Delaplaïne*, 14 Johns. 146; *Edelwith* v. *Alexander*, 45 How. 191; *Updike* v. *Campbell*, 4 E. D. Smith, 510; *Simmons*

v. *Wood*, 45 How. 262–72; *Fanner* v. *Albion*, 5 Hill, 121.) The answer and its allegations are technically sufficient to enable us to make this defense of illegality in the contract available. (*Russell* v. *Barton*, 66 Barb. 543.) The contract and the services thereunder were one and entire; if a part were illegal the whole were. The illegal part vitiated and contaminated the whole. (*Saratoga Bank* v. *King*, 44 N. Y. 91; *Rose* v. *Trual*, 21 Barb. 361; *Barton* v. *Plankroad Co.*, 17 id. 397; *Crawford* v. *Merrill*, 8 Johns. 253.) The plaintiffs and defendants being residents of this State, and the contract having been made here, it must be determined by the laws of this State, although part of it may have been performed elsewhere. (*Davis* v. *Garr*, 6 N. Y. 124; *Thatcher* v. *Morris*, 11 id. 437; Story on Conflict of Laws, § 282; 2 Kent's Com. 457.) If it was void or illegal by the laws of this State, it was void everywhere. (2 Pars. on Cont. 82–186; *Mather* v. *Bush*, 16 Johns. 233; *Hodges* v. *Shuler*, 24 Barb. 68; *Hyde* v. *Goodnow*, 3 N. Y. 266–7; *Jewell* v. *Wright*, 30 id. 259.)

*Levi H. Brown* for respondent. E. L. Harris having rendered beneficial services, for defendant, under the contract with plaintiffs, if he did not violate any express provision of statute, he who had employed him, and had the benefit of his services, could not refuse a reasonable compensation therefor. (*Harlen* v. *Lilienthal*, 53 N. Y. 440–441.) The contract being valid, defendant's claim to retain the benefit of the service and not pay therefor is untenable and unconscionable. (*Harris* v. *Sunnels*, 12 How. [U. S.] 79–85, 87; *Harris* v. *Woodruff*, 17 A. L. J. 231.) Strict rules must be applied to the defense as in actions for penalties, and the defendant was bound to state distinctly all the facts necessary to defeat the claim, and by allegation in the answer, as well as by proofs, bring his case within the terms and provision of the particular and precise statute claimed to cover the case. (*Langworth* v. *Broomly*, 29 How. Pr. 92; *Catlin* v. *Gunther*, 1 Duer, 253, 264–266; *O'Toole* v. *Garvin*, 1 Hun, 92; 25 N. Y. 266; 50 id. 314; 72 id. 196; 71 id. 420; 4 E. D. Smith, 234–236.) " At com-

mon law horse-racing for bets, as well as wager contracts upon most subjects, were legal." (*Gibbons* v. *Governeur*, 1 Denio, 170, 172; 7 Cow. 252.) The referee could not infer or presume the work contracted for and performed was criminal or violative of the statute, or against public policy, without allegation or proof, nor could he, by implication or construction, apply the statute to this case, because the evidence did not bring it within its terms. (*Haughwout* v. *Garrison*, 69 N. Y. 339; *Wood* v. *Erie R. R. Co.*, 72 id. 196; 66 Barb. 540, 547; *V. C. C. Co.* v. *Murtaugh*, 50 N. Y. 313; *Nelson* v. *Eaton*, 26 id. 410–415; *Bigelow* v. *Benedict*, 70 id. 202–206; *Story* v. *Solomon*, 71 id. 420–422; *Booth* v. *Sweezay*, 4 Seld. 276, bottom 280–281; *Valentine* v. *Connor*, 40 N. Y. 248–252, 253; 3 Comst. 470, 474; *Williams* v. *East India Co.*, 3 East, 192; 1 Greenl. on Ev., § 80.) Trotting in races for prizes, purses, etc., being lawful under certain circumstances, the burden was on defendant to allege and prove the illegality of those in question. (*Chautauqua Co. Bk.* v. *Risley*, 19 N. Y. 369, 381–382; *People* v. *Pease*, 27 id. 45–63, 745; *Farmers' L. and T. Co.* v. *Curtiss*, 3 Seld. 466–470; 70 N. Y. 202; 71 id. 420.) The finding of the fact that the parties did not, in the contract, contemplate or stipulate "for driving horses for any bet or wager, or in violation of any of the statutes of the State of New York," is conclusive on this appeal. (69 N. Y. 339; 18 id. 573.) As against White, the employer, the service contracted for and performed is presumed legal till he shows it otherwise. (*McPherson* v. *Chadwick*, 24 Wend. 24–25; *Smith* v. *Joyce*, 12 Barb. 21–26; *Thompson* v. *Sayre*, 1 Denio, 175–180.) As to all races contemplated in the contract, or trotted outside the State, the common law governs, as there was no proof of any different law there, and the referee could not presume one. (52 Barb. 120–129; *Wilcox S. P. Co.* v. *Green*, 9 Hun, 347; affirmed, 72 N. Y. 17; *Cutler* v. *Wright*, 22 id. 472–474; *White* v. *Knapp*, 47 Barb. 549.) As to the races trotted within this State, the statute must be strictly construed. (*Gibbons* v. *Gouverneur*, 1 Denio, 170–3–4; *Van Valkenburg* v. *Terry*, 7 Cow. 252–4–5.) The proof showed only races

trotted for what are termed premiums, purses or prizes offered on test of speed, such as is usual at our agricultural and other fairs, and such as are authorized by our legislature. (Laws 1870, 329, chap. 115, § 5 ; id. 348, chap. 131, § 5 ; id. 639, chap. 285, § 5 ; id. 846, chap. 372, § 5.) If the contract and transaction was susceptible of different constructions, the referee properly so construed it as to validate the same, and if equivocal, or there was in fact any cover or device for a wager or bet the defendant was bound to show it, as the referee could not find it illegal from suspicion or conjecture. (70 N. Y. 206 ; 69 id. 339 ; 71 id. 420.) The exception to the refusal to find, as requested, that there was no proof that any of the races trotted were for purses, prizes or premiums given by persons or corporations under the laws proved is untenable and unavailable on appeal. (27 How. Pr. 1 ; *McAndrew* v. *Whitlock*, 2 Sweeney, 632 ; 4 Hun, 415 ; *Bigles* v. *Pinkney*, 7 N. Y. W. Dig. 200 ; *Pendleton* v. *Hughes*, 65 Barb. 136, 145–6 ; *Stewart* v. *Morse*, 9 N. Y. W. Dig. 416, decided in Court of Appeals, January 13, 1880 ; 3 Hun, 111 ; 63 N. Y. 370–382 ; 68 id. 620 ; 18 Hun, 27 ; 65 Barb. 136 ; 52 N. Y. 262 ; 53 id. 504 ; *Hunt* v. *Chapman*, 62 id. 333 ; *Van Slyck* v. *Hyat*, 46 id. 259 ; 58 id. 123 ; *Carroll* v. *Staten Island R. R. Co.*, 65 Barb. 32, 39.)

FOLGER, Ch. J. This action is brought upon an account, which is of five items. This appeal touches one of them only ; that one is for the service of the plaintiffs for the defendant, done in fact by the plaintiff Erwin L. Harris. It is stated in the complaint as six months and seven days' labor, at $250 per month, footing up at $1,568.50. The answer sets up several defenses. The one that we need notice is, that the service above mentioned was rendered by Erwin L. as a jockey or driver of the horses of the defendant in races for money, in violation of the laws of the State of New York against horse-racing, and against betting and gaming.

The referee found as a fact that the service was rendered under an express oral contract, whereby Erwin L. was to drive the horses of the defendant during the trotting season of the

year 1875, at such times and places as the defendant might desire, in races or contests of speed, competing for purses, prizes or premiums, to be paid to the winner therein. That finding is upheld by the testimony. He also found that when that contract was made, the defendant's horses had been entered for such races or contests to take place at Philadelphia, Pa., Baltimore, Md., Brooklyn, N. Y., Hartford, Conn., and Boston, Mass., and that the race at Brooklyn, the only place above named that is in this State, was to be on the grounds of the Prospect Park Association ; that when the contract was entered into, these places were in the contemplation of the parties, together with such other places as the defendant would designate. This finding is upheld by the testimony.

The referee also found that the contract did not by its terms stipulate for, nor contemplate, the driving of horses for any bet or wager, or in violation of any of the statutes of the State of New York.

This is the important finding. If it is sustained, the conclusions of law of the learned referee follow, and the judgment that the plaintiffs have recovered must be affirmed.

There are two provisions of statute law that are to be noticed in passing upon this finding. One is found at 1 R. S. 662, § 8, and declares that all wagers, bets or stakes, made to depend upon any race, shall be unlawful. There are other sections to that act, but they do not touch the matter now in hand ; and this section 8 may be considered and disposed of in what we have to say upon the other statutory provision which we will notice, without further particular mention again of that section. That other provision is in 1 R. S. 672, § 55, " of the racing of animals," and declares that all trotting of horses for any bet or stakes, or for any reward to be given to the owner or rider of the horse that shall excel in speed, is a common and public nuisance and misdemeanor ; and a penalty is affixed to it of $500 fine, or imprisonment not exceeding one year. But embodied in the section, not attached to or following it, but making a part of the enacting clause, there is an exception from its denunciation, of such trotting as is expressly allowed by

special laws for that purpose. It will be seen as we go on, that this exception is of much importance in this case, not only because of the terms of it, but also because of the form and place of it in the section.

The words in the finding of the referee are " bet or wager ; " those in the statute just cited are " bet or stakes." They have substantially the same meaning. That meaning is different from that which is now conveyed by the terms " purses, prizes or premiums," as used by the other finding of the learned referee, although the word " purse " is used in the Revised Statutes, p. 673, § 57. A bet or wager is ordinarily an agreement between two or more, that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain ; and the stake is the money or thing thus put upon the chance. There is in them this element that does not enter into a modern purse, prize or premium, viz. : that each party to the former gets a chance of gain from others, and takes a risk of loss of his own to them. " Illegal gaming implies *gain and loss between the parties* by betting, such as would excite a spirit of cupidity." (*People* v. *Sergeant,* 8 Cow. 139.) A purse, prize or premium is ordinarily some valuable thing, offered by a person for the doing of something by others, into the strife for which he does not enter. He has not a chance of gaining the thing offered ; and if he abide by his offer, that he must lose it and give it over to some of those contending for it is reasonably certain. Such is the meaning of the words now, in common understanding, in the practical use of them, and in the legislative purview, as will be seen by the citations which we make. (Laws of 1868, chap. 91, § 3 ; chap. 523, Laws of 1860, § 3 ; Laws of 1872, chap. 609, § 2.) These words, " purse, prize or premium," as used in the laws cited, are not within the meaning of the Revised Statutes (1 R. S. p. 672, § 55), when those statutes utter the words " bet or stakes." And when the learned referee found that the agreement of these parties was to drive in contests of speed for purses, prizes or premiums, and found that it did not

stipulate in its terms for driving for a bet or wager, his findings were consistent.

We think also that the contract did not contemplate a driving for a bet or wager or stakes. The appellant seeks to make out otherwise, by the evidence of the dealings of the parties with regard to the same horses in the years just before this contract was made. It may be conceded for this case that they did then all bear the expenses of the horses, and did all share in the winnings or earnings by the animals; that they did buy pools and divide the avails therefrom, and that they were all mixed in divers underhanded, unfair and evil practices, to the taking in of the public. But there is that in the testimony from which it is inferable that that way of dealing was to be abandoned, and that a bargain was to be made for the year 1875, that would make definite the sum that the plaintiffs would have, and that the defendant would pay for their services. Besides that, though the parties connived with the owners or drivers of horses other than the defendant's that there should not be in fact a contest of speed, but that without real contest, a horse fixed upon beforehand by the plotters should be allowed to come out ahead in the feigned race, that is a mode of doing things not yet forbidden by any statute, not yet the subject of public reprobation, expressed through the legislature. We cannot say that the finding of the learned referee was wrong because of the evidence just spoken of, when there is testimony that the parties had turned their backs on the past, and set their faces toward a different mode of compensation to the plaintiffs, and in the absence of statutory disapprobation of these practices.

The appellant also claims that the evidence of what was done during the year of this agreement showed that the parties contemplated driving for a bet or wager. Without doubt, the plaintiffs were contracted with by the defendant, because of the skill of one of them in driving horses on the track; but that skill could be put forth as well in contests for prizes as in races for bets. The testimony of secret bargains between the defendant and other horsemen, at different tracks, during the

year 1875, is also cited by the appellant, and that the plaintiff
drove, by the order of the defendant, so as to make it sure to
those in the plot which horse would take the purse. Far be it
from us to say, that such sort of thing is moral or fair, or up
to the tone of public sentiment, as expressed in the Revised
Statutes, against racing of animals. It was not a bet or a
wager, or stakes, however; nor was it making one, nor driving
or riding for one. Indeed that way of doing things took out
of the contest the element of chance and risk which is needed
to make a bet or wager. It was something not foreseen by
the makers of the statute against racing. It is not yet forbid-
den by a statute. It is wrong-doing, but not statutory wrong-
doing. That it needs to have a penalty put upon it is plain,
if contests of horses in speed are to be favored. It does not
fall under the inhibition of the present statute against bets
and stakes. It is a modern device, found out since the passage
of the statute now in view, reprehensible and fraudulent. The
statute meant to forbid a race for a wager or stakes; that is, a
race in which there was a chance to a person to win what
some other contestant had put in, and a risk of losing what he
had put in himself. It is in testimony too, that after these
evil arrangements had been made between the owners or
drivers of horses, in the years before 1875, the defendant and
the plaintiff, Erwin L., did, sometimes together and sometimes
alone, buy pools and get gain thereby. There is no proof of
what the buying of pools is; probably it is a device by which,
ordinarily, money may be got from others by taking the risk
of losing one's own; as we may infer from chapter 178, Laws
of 1877, page 192, in relation to pools. The contract for the
year 1875, however, does not, in terms, stipulate for this. Nor,
in view of what we have said, can we determine that the testi-
mony is so conclusive that it contemplated this, as that it is
plain that the referee erred in his finding. The statute last
cited does not, in terms, forbid the buying of pools. Its pro-
visions are against the selling of pools; yet it doubtless ex-
presses the legislative reprobation of the pool selling and buy-
ing that disgraces the public exhibitions of the speed of horses,

and many other doings in public, at this day; and as there could none be bought, if none were sold, it is to be taken that the policy of the statute is against the buying as well as the selling. It is testified that in 1875, the defendant won a pool at Newark, N. Y., and divided with Erwin L., one of the plaintiffs; but there is not direct proof that it was a pool formed on a contest in which either of defendant's horses was to partake, or that the winning or losing of it depended at all on the services of Erwin L. in driving or riding. If there is room for an inference that it was so, it is not permissible for us to make it to the reversing of the judgment of the referee. At Elmira, N. Y., Erwin L., above named, alone bought a pool. It does not appear that the defendant had any thing to do with this, or that it was so connected with plaintiffs' services for the defendant as to require a finding from the referee that it was contemplated by the contract. There may have been other instances of winnings by them, or one of them, from the pool box; they were not in this State, and so not within the scope of this defense. There is a piece of testimony that is of weight on this branch of the case. The defendant testified that Erwin L., in 1875, had no authority to make these secret bargains without consultation with the defendant. This may have influenced the referee in considering the whole testimony, whether it showed that the plaintiffs, when they made this agreement, had in view these incidental matters that certainly did not enter into its terms. It tended to show that the defendant meant to keep, and did keep, in his own control the making of those secret and vicious arrangements. As the plaintiffs had no power, by the contract, to call upon the defendant to make them, it is not proper to say that the contract contemplated his making them, in the sense in which that phrase is used by the law. And, turning the contract to the other side, can it be claimed that if the plaintiffs had refused to drive so as to carry out any secret bargain made by the defendant, that he would have had a right of action against them therefor upon the contract, granting that there was no other objection to his having that right than that the contract

did not provide for or contemplate it? We think not. At all events, we are not able to say that the finding of the referee that the contract did not contemplate driving for a bet or wager is so without support from the testimony, as that his judgment based thereon in part should be reversed.

So we conclude that we will not disturb the finding of the referee, that the contract sued upon did not stipulate by its terms, nor contemplate, that the plaintiffs would drive the horses of the defendant for a bet or wager; in which words we include the word "stakes" of the statute, though that is not used by the referee.

The rest of that finding is, that the contract did not contemplate or stipulate by its terms, for the driving of horses in violation of any statute of this State. The statute against the racing of animals (1 R. S. 672, § 55) forbids the trotting of horses for "*any reward*" to be given to the owner or rider of any animal that shall excel in speed. We will not now say — we do not know that we will ever say — that a prize, purse or premium, to be given on a contest in speed, is not a reward, within the meaning of the statute, or that a riding of a horse for such prize is not a riding for such a reward. Nor will we now determine whether one who drives a horse to harness comes within this statute, which does not name a driver, but does name a rider. In this case, one of the parties to the contract was the owner of the horses driven; and if the plaintiffs contracted with him to do acts within the grasp of the statute, so far as he, being the owner, was concerned, the contract is obnoxious to its prohibition. We will not now say, that unless the reward to be given is allowed by special law for that purpose, it is not a violation of the statute to trot a horse in a race for it; or that a contract to drive a horse at a trot, to get the reward, is not void as against the statute and public policy. If it be conceded that it is, the defendant has not in this instance made it out by the proof, as he had the burden of doing.

In the first place, whatever was done or agreed to be done, without the borders of this State, by the plaintiffs, is not to be deemed a violation of the statute, or against the public policy

of this State. At common law all wagers were not illegal. (*Da Costa* v. *Jones*, Cowp. 729; *Good* v. *Elliott*, 3 T. R. 693; *Bunn* v. *Riker*, 4 Johns. 427.) It was not illegal, at common law, to make a bet or wager on a horse-race; and an action to recover a wager won has been maintained. (*McAllester* v. *Haden*, 2 Camp. 438; *Blaxton* v. *Pye*, 2 Wils. 309; and see *Gibbons* v. *Gouverneur*, 1 Denio, 170.) It would not have been illegal, at common law, to have offered a purse, prize or premium, that is, a reward, for the horse that excelled in speed; nor to have agreed to drive or ride a horse in a contest therefor. If the common law prevails in the other States in which by the contract the plaintiffs agreed to drive the defendant's horses, then that contract was not illegal by the law of those States, and the statute law of this State may not run over its borders into those States and with it carry thither the public policy of this State. The defendant has made no proof of what is the law of those States on this subject; he has not even pleaded that by that law this contract was illegal. (*Cutler* v. *Wright*, 22 N. Y. 472.) As a general rule, courts of one State, in the absence of proof and allegations otherwise, will presume that the laws of another State are like those of their own State. It is doubted, however, whether this presumption will be made of statute law. (*McCulloch* v. *Norwood*, 58 N. Y. 567; *Wilcox Co.* v. *Green*, 72 id. 17.) It will not be made of statutes imposing a penalty or forfeiture. (*Cutler* v. *Wright*, *supra*.) And it has been declared that a court cannot take notice judicially of any laws of other States not according to the common law. (*Holmes* v. *Broughton*, 10 Wend. 75.) To trot a horse in another State for a wager or for stakes, or for a purse, prize or premium, is not then *prima facie* illegal in that State. To agree to drive a horse in a contest of speed in another State is not, so far as this case shows, a contracting to do an unlawful thing, nor one against the policy of this State; for the statute law and policy of this State we may not hold to be prevalent there.

We are confined, then, to the places in this State to which this contract looked. We have already noticed that the act

forbidding the racing of animals has in it an exception, by which it is not unlawful to do that thing when, by special laws for that purpose, it is expressly allowed. This provision of the Revised Statutes is not found in the Revised Laws on the same subject (vol. 1, p. 222); and the insertion of it in the Revised Statutes indicates a tendency to relax the law against the racing of animals. We think that the phrase in section 55 of the Revised Statutes, "excepting such as are by special laws for that purpose expressly allowed," is not limited to the time of the adoption of those statutes. It not only operated to except such trotting as was allowed by special laws existing at the time of the passage of the Revised Statutes, but it had a prospective effect, and now operates to except such trotting as has been allowed by special laws then existing or passed since that time. To be sure, any permissive act, passed since the adoption of the Revised Statutes, would, of its own force, relieve any thing it permitted to be done, from a penalty prescribed therefor by those statutes. But we prefer to take the Revised Statutes themselves, in this part of them "of the racing of animals," as excepting from the prohibition named therein, such trotting of horses as was then allowed, or as has since been allowed, by special laws passed for that purpose. So that if, when the Revised Statutes were adopted, there were special laws allowing the trotting of horses for a bet, stake or reward; or if since then there have been passed such laws; at the places to which such laws applied, it was not unlawful so to trot a horse, nor was it unlawful to make a contract to drive him in a trotting race there. Therefore it cannot be said of a trotting of a horse for a reward at some place named, or of a contract so to do, that it is unlawful, until it is known whether some or more of those special laws do not have effect at that place. If there are special laws that allow rewards to be offered for contests of speed at that place, then it is not unlawful, nor against public policy, to trot a horse there, nor to make and perform a contract so to do. The referee has found that when the agreement was made, the only place in this State at which the defendant's horses had been entered for a

contest was at the Prospect Park Association at Brooklyn, and that that place, and such others as the defendant should designate, were in the contemplation of the parties. That association was authorized by law to give premiums on the trial of animals for superiority in the object sought for (Laws of 1859, p. 1096, chap. 473, § 3), which object was the improvement in the breed of horses (Id., § 1), and that includes an improvement in the speed of those animals. So far the law protected the act of driving and the contract to do it. The referee has also found, that the plaintiffs drove the defendant's horses under this contract in contests of speed at Medina, Syracuse, Watertown, Newark, Poughkeepsie, Potsdam and Elmira, in this State. Associations for the improvement of the breed of horses, and for driving-parks, had been formed under particular statutes, or under a general law, at Elmira, Medina, Syracuse and Poughkeepsie. (3 Edm. Rev. Stat., pp. 763–768; Laws of 1872, p. 1468, chap. 609.) By those laws those associations lawfully offered rewards in contests in speed. Therefore it was not illegal to drive for those rewards, or to agree to do so. It does not appear that at either of the other places named there was a like association; yet, until it is shown by proof that there was not, the plaintiff's contract is not made out to have been illegal; for we know that there are particular statutes of the kind above noticed, and a general law enabling the formation of those associations. And here comes in a thing to which we have already adverted, that this part of the act giving effect to these special laws is embodied in the enacting clause of the act itself; it is an exception from that enacting clause, and not a *proviso* following it. Now an exception in a statute must be negatived in pleading, while a *proviso* need not; and this, it is said, is on the ground that an exemption by *proviso* is matter of defense that a party must show to relieve him from the liability. (*Spiers* v. *Parker*, 1 Term Rep. 141.) Where an exception is incorporated in the body of the clause of the statute, he who pleads the clause ought to plead the exception. But when there is a clause for the benefit of the pleader, and afterward follows a *proviso* which is against him, he may plead

the clause, and leave it to his adversary to show the *proviso*. (*Jones* v. *Axen*, 1 Ld. Raym. 119.) When the offense is brought within the enacting clause, and the justification comes in by way of *proviso* or exception, in the first case it is matter of defense to be shown by the defendant; in the other case the exception must be negatived. (*King* v. *Bryan*, 2 Str. 1101; see, also, *Spiers* v. *Parker*, 1 Term Rep. 141; *Steele* v. *Smith*, 1 B. & Ald. 94.) A reading of the statute will show that the exception is embodied in the enacting clause. *Fleming* v. *The People* (27 N. Y. 329) recognizes this rule, thorgh holding it inapplicable to the bigamy statute counted upon in that case.

Then the allegation in the answer of the defendant in this case, that the services sued for were in violation of the laws of the State of New York against horse-racing and betting and gaming, is either defective, or it must be taken· to import an averment that they were rendered at a place not within the exception of the statute. And it being needful that the defendant allege it, and he having alleged it, it was upon him to prove it also, though it is an averment in the negative; for the law presumes that each man obeys the law. (*Rex* v. *Hawkins*, 10 East, 211; *Bennett* v. *Clough*, 1 B. & Ald. 461; *Sissons* v. *Dixon*, 5 B. & Cress. 758.) It then presumes an affirmative (1 Greenl. Ev., § 35), and when it does so, the negative must be proved. (*Monke* v. *Butler*, 1 Rol. 83.) The burden of proving that any person has done a wrongful act is on him who asserts it; if the assertion be that the defendant has laden inflammable matter upon plaintiff's ship without giving the notice required by law in such case, the plaintiff must prove the want of notice (*Williams* v. *East India Co.*, 3 East, 192); and where one party charges another with a culpable omission or breach of duty, he who makes the charge must prove it, though it involves a negative. (1 Phil. on Ev. *813, and cases cited.) There is an exception to this, when the subject-matter of the negative and the means of proof thereof are peculiarly within the knowledge and power of him who claims to be within it; as is the case of a violation of the excise laws;

he who by license to sell strong drinks is excepted from the prohibition of those laws must show his license, as he, more than any other, knows that he has it, and has it at his hand in duly authenticated form (*Potter* v. *Deyo*, 19 Wend. 361); and it seems to be considered that the fact of being qualified to kill game, in a proceeding under the game laws, is for the accused party to prove (1 Phil. on Ev. 556, and cases cited), though the sayings of judges are not harmonious. There is also an exception when the negative of the issue does not admit of direct proof. (27 N. Y., *supra*, per DENIO, Ch. J.) But neither of these exceptions come in here. It was easily to be proven whether or no, at the places named, there were associations legally formed, having power to offer prizes for excellence in speed of trotting horses, and whether or no it was for prizes offered by them that the defendant's horses were driven; and those facts were not peculiarly within the knowledge of the plaintiffs or peculiarly in their power to prove. *Dykers* v. *Townsend* (24 N. Y. 57) is in point. There, was a defense that the contract sued upon was void, as violating the statute against stock jobbing. (1 R. S. 710, § 6.) That statute is framed like the one against the racing of animals; both general in their prohibitions, but embodying an exception. In the one, all trotting of horses is illegal, except such as is by special law allowed. In the other, all contracts for the sale of stock were void, unless the vendor had in possession or was entitled to the certificates for the shares contracted, or authorized to sell by an entitled person. It was held that a contract to sell stock was valid at common law; it was upon the vendee alleging the illegality of it, by reason of the statute, to make proof that it was invalid; to do which the burden was on him to prove that the vendor was not within the exception of the statute, that the vendor did not have in possession, nor was entitled to the certificates, nor authorized to sell the amount named in the contract of sale. It is to be confessed that that case goes far beyond the one in hand, for there the knowledge of ownership or of possession, or of authority and the means of proof were peculiarly the vendor's. We, therefore, are of the opinion

that it was for the defendant to aver and prove that the places at which it was contemplated that the horses were to be driven were not places under the sanction of some special law allowing the trotting of horses in contests in speed for a prize, purse or premium.

It is urged that the payment of entrance fees by the defendant for his horses was a staking of so much of his own money upon the result. So it might have been, if the entrance fees went immediately to make up the purse trotted for. They did not, certainly not specifically, make up the purse. They were the purchase of a privilege to enter for the race and to contest for the purse, the giving of which is made lawful by statute law. They were an expense to the defendant; in kind, like any other attending the keeping and traveling about with his horses for a compensation now, in some cases, made lawful. They were one of the means, doubtless, by which these associations authorized by law supplied themselves with money to provide and keep up their grounds and tracks, and by the offer of premiums entice the owners of horses to come together for real or simulated contests in speed. The fees went into the treasuries of the associations and the prizes came out of those treasuries; but the fees were not money paid, as in *Gibbons* v. *Gouveneur* (*supra*), for the express purpose of making a stake to be specifically trotted for, and for no other purpose, and with the previous agreement that the very sums thus paid should form the stake, and to go, the whole of it, to the winner of the race. Those associations exact a fee at the gates of their grounds from all coming in to behold the contest, and that goes into and comes out of the treasury, as do the entrance fees on horses, and mingles with them in the premiums. Does the payment of such a fee at the gate make the spectator a contributor to the purse within the meaning of sections 57 and 58 of the act of racing of animals, so that he forfeits $25 and the amount that he pays, to be sued for and recovered by the poormaster? Besides, the law allows those associations to charge for an admission to their grounds, and also for the use of them, or any part of them, and the track is a part of them, and the

entrance fee is paid for the use of it on a specified occasion. We think that it would be a stretching of the statute, to make it cover the facts which it would not otherwise fit, to say that the entrance money paid by the owners of horses, going into the treasuries of these associations and mingling with their funds elsewhere got, were, within the purview of this penal statute, bets or stakes for which the animals were trotted.

It follows, then, that the defense set up that the contract of the parties was in violation of a penal statute of the State, was not made out, and that the referee did not go against the evidence when he found that the contract did not contemplate or stipulate by its terms for the driving of horses for any bet or wager, or in violation of any statute of this State.

The judgment should be affirmed.

All concur.

Judgment affirmed.