(25 App. Div. 228.)

## ZELTNER v. IRWIN.

(Supreme Court, Appellate Division, First Department.    January 21, 1898.)

1. CONTRACT—WHAT CONSTITUTES.
   An advertising circular of a stock broker, which merely sets forth the advantages of a certain method of dealing, and the broker's facilities for representing investors, without setting forth in particular what is to be done with moneys intrusted to him, does not constitute an "offer," such that the mailing of a letter from a recipient thereof to the broker, inclosing funds for investment, but making no reference to the circular, would constitute an acceptance and close a contract between the parties.

2. SAME—ACCEPTANCE—LEX LOCI.
   In such a case it is the investor's letter that constitutes an offer to contract, which is consummated by the mailing of the broker's acceptance, and that the contract is therefore governed by the laws of the place where the broker's acceptance, and not the investor's letter, was mailed.

3. WAGERING CONTRACTS—VALIDITY.
   Wagering contracts, merely as such, were not invalid at common law.

4. FOREIGN LAWS—PRESUMPTIONS.
   In the absence of proof, courts of one state, the statutes of which render wagering contracts unlawful, will not presume the existence of corresponding statutes in another state.

Appeal from appellate term.

Action by Henry Zeltner against George M. Irwin. From an order of the appellate term (46 N. Y. Supp. 852) affirming a judgment of the general term, which affirmed a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

R. Burnham Moffat, for appellant.

Edgar J. Lauer, for respondent.

RUMSEY, J.    The action was brought by the assignee of one Annie W. Smith and Annie W. W. Smith to recover from the defendant sums of money which the two assignors had sent to the defendant to be used in the purchase of futures in grain in the Chicago market. The claim of the plaintiff is that the money was to be used ostensibly in the purchase and sale of grain in that market for future delivery, but that it was understood between the two assignors and the defendant that no actual delivery of grain should be received or made, but that the entire transactions had with the money should be mere wagers or bets, dependent upon the rise and fall of the prices of grain in the market, which prices fluctuated from day to day, and were unknown and contingent events. It was claimed by the plain-

tiff that these contracts were unlawful under the statute of this state, enacting that all wagers, bets, or stakes, made to depend upon any chance, casualty, or unknown or contingent event whatever, should be unlawful, and providing that such contracts should be void; and he sought to recover under the authority of that provision of the statute which authorized any person who should deliver or deposit money upon any such contract to recover it back. 1 Rev. St. p. 662, §§ 8, 9. The defendant admitted that, when the money was delivered to him, it was understood between himself and the assignors of the plaintiff that no actual delivery of the grain should be received or made, but that all the transactions had with the money should be mere wagering contracts upon the rise and fall of prices of grain in the market, which said prices fluctuated from day to day and were unknown and contingent events. But, while admitting these facts, the defendant insisted that the plaintiff was not entitled to recover, because he claimed that, although the contract, as it was admitted to be, was void by the laws of the state of New York, yet that it was not made in the state of New York, but was made in the state of Pennsylvania, and that there was nothing to show either that such a contract was illegal in the state of Pennsylvania or, if it was illegal, that the plaintiff's assignors, being in pari delicto with the defendant, could not recover the money which they had willingly invested in a contract of that kind.

There is no doubt that wagering contracts, as such, were not invalid at common law, unless, in addition to being wagering contracts, they contravened some recognized rule of public policy. The wagering element, merely, was not sufficient to make the contract invalid, or to authorize a person who had invested money upon it to recover that money from the person to whom he had paid it. Chit. Cont. (11th Am. Ed.) 735; Bunn v. Riker, 4 Johns. 426. The right to recover of the plaintiff, then, must stand upon the statute of the state of New York. But that statute has no extraterritorial force, and it cannot operate to make unlawful any contract which was valid in the jurisdiction where it was made. If the plaintiff's assignors entered into this contract in the state of Pennsylvania, they were bound by it, if it was a valid contract there. Story, Confl. Laws, § 282; Jewell v. Wright, 30 N. Y. 259. There is no proof in the case, and no allegation in the complaint, that in Pennsylvania such contracts were invalid, or that by the laws of that state money paid upon them could be recovered back. Such invalidity, and the right to recover, only come to exist by the statute, and there is no presumption that the statute of Pennsylvania in that respect is like the statute of the state of New York (Cutter v. Wright, 22 N. Y. 472); but, on the contrary, in the absence of proof on the subject, the presumption is that the law which obtains there is the common law (Greenl. Ev. [14th Ed.] § 43, note; Harris v. White, 81 N. Y. 532). By that law this contract was not illegal. Therefore it is material to consider whether the plaintiff's contention that the contract was made in the state of New York is well founded, because, if it is not, he has failed to establish a right to recover.

No evidence was offered on the part of the defendant. The case stands solely upon the testimony which the plaintiff produced. At the close of the plaintiff's case each party moved for the direction of a verdict, and, after consideration, a verdict was directed for the plaintiff, to which the defendant excepted. That exception fairly raises the question which the defendant seeks to present. There was no disputed question of fact in the case, and the only question is whether, giving to the evidence of the plaintiff all the weight to which it can fairly be entitled, it can be said that the court was right in concluding that the contract was made in the state of New York and is governed by the laws of that state. It was made to appear that the defendant lived and had his place of business in Pittsburg, in the state of Pennsylvania. The evidence of the plaintiff was to the effect that at a certain time in 1893 one of his assignors received through the mail a printed circular, postmarked "Pittsburg," at the bottom of which was printed the name of the defendant, and upon which was given the address, "10 Ferguson Block, Pittsburg, Penn." That paper had been destroyed by the witness before the trial of the action, but she gave her version of the contents of it, which were, as stated by her, to the effect:

"That people down in Wall street were content to put in large sums of money, and get large gains, whereas, people of smaller means would put in smaller sums; that they could add up all together, and then they would be content with smaller amounts, while rich people would not be content with smaller amounts; that poor people would be content with $10 gain, while rich people would not be bothered looking at that, but that he would put the whole lot together in the markets in Chicago, where he had facilities of knowing all about it, and that he rarely ever failed in his judgment on the market."

The witness further stated that there was a little printed circular containing statements of profits:

"One month, $10; another month, $10; some months, $10, or $15; one month, $20; and each month you get a whole lot of money. If you spent $100 each month, you got $10 extra; and, if you put that $10 back, you would get more, and in a short time you would get quite wealthy."

This is the substance of the circular as given by the witness. She stated that, after she had received that circular, she sent a letter to Irwin from New York, to the address which was given in the circular. The contents of that letter are given. She says that she sent a check and a note at the same time, stating that:

"So many dollars were from Mamma, and so many from myself; and, when he sent the receipts, would he credit my mother with so much money, and me with so much money, and send each a separate receipt, so as not to get things mixed?"

The letter contained no reference to the circular, and no suggestion that it was sent in pursuance of any proposition or offer or request contained therein. It is conceded that the defendant, in answer to the letter, returned a receipt containing substantially a contract to use the money in the purchase and sale of future contracts in grain for the account and risk of the person sending the money, in accordance with the rules of the Chicago Board of Trade; the receipt containing provisions as to the commissions to be paid to the defendant, and as to the payment of the profits and the liability

for losses, and.that neither party should incur any liability for any
sum beyond the amount invested.   This receipt was mailed at Pitts-
burg and received by the plaintiff's assignors, and apparently accept-
ed by them, and after its receipt further sums of money were sent
to Irwin to be used in the same way.

The plaintiff .claims that the circular constituted an offer on the
part of Irwin to make a contract to speculate in futures at Chicago;
that, when it was followed by the sending of money to him by the
plaintiff's assignors, the contract was complete; that, the money
having been deposited in the post office in New York, the accept-
ance of Irwin's offer was then made; and that, the acceptance hav-
ing been made in this state, the contract was a New York state con-
tract.   It is very doubtful whether the evidence was sufficient to
bring home to Irwin any knowledge that the circular was delivered to
the plaintiff's assignors, or, indeed, that it was issued by him.   That
such a circular was received by Mrs. Smith must be conceded, but
that it was sent by Irwin, or that it was even issued by him, has not
been proved.   The fact that it bore his signature printed upon it is
not, of itself, sufficient; and there was no reference to the circular,
at the time the money was sent, from which it could be inferred that
Irwin had any knowledge that the transaction had been undertaken
on the faith of his advertisement.   On the contrary, Mrs. Smith no-
where suggests that she made any reference in the letter which she
sent.   For that reason, without going further,. there is grave doubt
whether the circular could be regarded as an offer made by Irwin
which was accepted by Mrs. Smith, even if the circular itself could
be said to amount to an offer to make a particular contract.   But an
examination of the circular shows quite clearly that it is not sus-
ceptible of any such construction.   It is utterly impossible to say,
from reading it, that any particular contract is proposed to be made.
The advantages of a certain mode of dealing are set forth in glow-
ing terms, and the facilities which the signer of the circular had to
give to investors the benefit of these advantages are stated; but it
is not possible to gather from the circular what was to be done with
the money, except, generally, that it was to be used for speculative
purposes in the Chicago markets.   So far from being an offer to do
any particular thing, by the acceptance of which a contract would
be created, it is a mere proposal to assume business relations, for the
purposes of speculation, with persons who should desire to under-
take such things.   It is like any other advertisement, the effect of
which is simply to give notice to persons who desire to enter into a
particular business or speculation that the advertiser is prepared to
enter into a business relation; but it is not sufficiently definite to
serve as the basis of a contract.   An offer, to serve as such a basis,
must be such as that, upon the acceptance, without more, not only
can the contract be ascertained, but that it will be obligatory upon
each party at the time the acceptance is deposited in the post office,
whether the one making the offer receives it or not (Mactier v. Frith,
6 Wend. 103; Trevor v. Wood, 36 N. Y. 307); and unless it is suffi-
ciently definite for that purpose, so that the contract is complete

when the acceptance is mailed, and that neither party can withdraw from it after that time, it cannot be the foundation of any rights. An examination of this paper shows clearly that it is not sufficiently definite to be construed as a contract in any aspect whatever, and it is very clear that the mere deposit of this money in the post office, in a letter which in no way referred to this circular, would not have been sufficient to bind the defendant to any contractual relations with the person depositing it. Indeed, even the receipt of the money, under these circumstances, would not have been sufficient, because it is conceded that no reference to the circular was made in the letter, and the defendant, therefore, had no means of knowing, when the letter was received by him, that the plaintiff's assignors had any intention or desire of complying with the terms of this particular paper, or, indeed, had any knowledge of it, and there was no reason why Irwin was not at liberty, if he saw fit, to return the money upon its receipt, and it is clear, if he had done so, he would not have been bound by any contract relation with Mrs. Smith.

Under all the circumstances of the case, it is clear to us that the circular, so called, was a mere advertisement; that the sending of the money to the defendant was the offer to enter into the contract; and that that offer reached the dignity of a contract only when it had been accepted by Irwin by the transmission to Mrs. Smith of the receipt, which it was conceded he sent, and she received. That was done in Pittsburg, and the contract, therefore, was made at that time, and it was a Pennsylvania, and not a New York, contract, and it is governed by the laws of that state, and not by the laws of the state of New York; and therefore the court below erred in holding that it was invalid under the laws of this state.

For these reasons, the judgment of the courts below must be reversed, and a new trial granted, with costs in all the courts to the appellant to abide the event. All concur.