ARBURY v. DE NIORD et al.

(Supreme Court, Equity Term, Erie County. March 15, 1915.)

1. TRUSTS ☞62½—PAROL TRUST OF FOREIGN REALTY—LAW GOVERNING.

In an action by a trustee in bankruptcy to impress with a trust in favor of the creditors of the bankrupt lands in Canada standing in the name of another, Canadian laws governed the transactions between the bankrupt and the holder of the legal title.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 89; Dec. Dig. ☞62½.]

2. EVIDENCE ☞81—PRESUMPTIONS—FOREIGN LAW.

While the presumption is that the common law of Canada is the same as that of the state, no such presumption prevails as to Canadian statutory law.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 102; Dec. Dig. ☞81.]

3. TRUSTS ☞17, 18—PAROL TRUST IN LAND—VALIDITY.

By the common law of the state and its general equity jurisprudence, a parol trust in land is valid and enforceable.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. ☞17, 18.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⬦➾140—TRANSFER BY BANKRUPT—VALIDITY.

Where, previous to his adjudication as a bankrupt, an insolvent received money from one for whom his wife held real property in Canada in trust, and mingled such money with his own funds in bank, upon which he drew checks for his own purposes, but eventually applied the money received to the repair, etc., of the realty, the purpose for which it was paid him, and where such insolvent's wife subsequently conveyed such property to the beneficiary, there was no right in the insolvent's trustee in bankruptcy, after adjudication, to impress a trust upon the property in Canada in favor of the bankrupt's creditors, since beneficial title to the funds which had passed through the bankrupt's hands to go into such property never vested in him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ⬦➾140.]

5. BANKRUPTCY ⬦➾161—PREFERENCES—STATUTE.

Where, previous to his adjudication as a bankrupt, an insolvent received money from one for whom his wife held real property in Canada in trust, thereby becoming such beneficiary's debtor, used the funds so secured in the maintenance and care of the trust property, and the insolvent's wife thereafter conveyed such property to the beneficiary, after the insolvent's adjudication in bankruptcy his trustee could not impress upon such property a trust for the benefit of creditors; the payments having been made more than four years previously to the adjudication in bankruptcy, while the national Bankruptcy Act avoids only preferences within four months of adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⬦➾161.]

Action by Ward B. Arbury, as trustee in bankruptcy, of Richard S. J. De Niord, against Richard S. J. De Niord and others. Complaint dismissed.

Edward W. Hamilton, of Buffalo, for plaintiff.
Edwin L. Dolson, of Buffalo, for defendant De Niord.
William B. Dickinson, of Buffalo, for defendant Campbell.
James McCormick Mitchell, of Buffalo, for defendant People's Bank of Buffalo.

WHEELER, J. This action is brought to impress certain real property, consisting of a lot with a cottage thereon, located at Point Abino, Canada, with a trust in favor of the creditors of the bankrupt, upon an allegation that the bankrupt's money went into and paid for the property, while the legal title to the real estate was conveyed to his wife, Annie Upton De Niord, and subsequently by her to the defendant Mary S. Campbell.

The facts of the case are that the defendant Richard S. J. De Niord has been insolvent for years, and on April 11, 1914, was duly adjudged a bankrupt. The defendant Mary S. Campbell has been for many years a personal friend and intimate in the De Niord family. Miss Campbell maintained a home or retreat for patients taking treatment with many of Buffalo's prominent physicians. She expressed a desire to secure some place where she might go in the summer season, and be free from the cares and responsibilities of her work. Mr. De Niord learned that the cottage in question at Point Abino could be purchased at a bar-

gain, and called Miss Campbell's attention to the fact. He at the same time told her he had no money with which to buy the property. Miss Campbell then offered to buy the property and furnish the money so to do, and made this arrangement with Mrs. De Niord: That she (Mrs. De Niord) should look after all the details of the transaction through her husband, but that the title to the property should be taken in Mrs. De Niord's name; that she should see to the necessary repairs, pay the taxes and insurance, and take general management of the cottage, of which Miss Campbell wished to be relieved; that thus a home might be provided for Miss Campbell, where she should be at liberty to go and stay whenever she desired.

Miss Campbell agreed to furnish the money needed for all these things, and Mrs. De Niord agreed to convey to Miss Campbell the property in question whenever requested to do so. Mrs. De Niord had no means of her own, and was unfamiliar with business matters, and it was agreed that her husband, Richard S. J. De Niord, should act as agent for the parties in doing what was necessary to be done. This arrangement was carried out. The property was purchased and deeded to Mrs. De Niord in March, 1910. The price was either $4,500 or $4,800. Money was expended in alterations and repairs, and in the care and maintenance of the property. All this money was, in fact, advanced and paid by Miss Campbell, and amounted to about $7,500 in all. It was sometimes advanced in cash, but principally in checks on Miss Campbell's bank account, drawn to the order of Richard S. J. De Niord. Whenever money was paid by Miss Campbell for these purposes, and pursuant to the arrangement between the parties, Mrs. De Niord gave Miss Campbell a receipt for the amount advanced, to be applied on purchase or maintenance of the cottage at Point Abino "through R. S. J. De Niord, Agt." The receipts and checks produced show beyond any question that Miss Campbell in fact paid from her own funds for the cottage, the improvements and maintenance, and that none of the money of Mr. De Niord went into the property.

Mr. De Niord had a bank account of his own in the People's Bank, and, when money or checks were received from Miss Campbell, deposited a good share of them to his individual credit in the People's Bank. He was a borrower from, and indebted to, other people, and loans and advances by them also went into this account. In any event, he commingled the moneys paid by Miss Campbell with his own, and with moneys derived from others. It is not improbable that some of the moneys advanced by Miss Campbell, instead of being immediately devoted to the purposes for which they were given, were temporarily used by him for other purposes. Nevertheless, although the moneys may have been so used, Mr. De Niord in fact made good for any such temporary misappropriation, and in fact used the amount of money advanced by Miss Campbell in paying for and improving the property in question, and no money of his own went into it. The former owner of the property conveyed to Mrs. De Niord by deed dated March 26, 1910, and on the 15th day of June, 1914, Mrs. De Niord, at the request of Miss Campbell, deeded the property to her. Before doing this, however, by and with the consent of Miss Campbell, Mrs. De Niord

gave a mortgage on the property to the People's Bank to secure notes given the bank, signed by both Mr. and Mrs. De Niord.

These facts the evidence establishes most completely and satisfactorily, and, such being the case, we are unable to discover how, upon any theory, the plaintiff can succeed in this action. In the first place, Miss Campbell was at all times the equitable owner of the Point Abino property. Mrs. De Niord, in equity, simply held the property in trust for Miss Campbell, whose money paid for it.

[1, 2] It is claimed that such a trust is void and unenforceable under our statutes. It is at most only a matter between Miss Campbell and Mrs. De Niord, and does not concern the creditors of Mr. De Niord. The property concerned, however, is located in Canada, and the Canadian laws must govern. We are not advised of the provisions of the statutes of Canada on the subject, or whether there is any statute relating to the situation. We cannot presume that the statute law of Canada is the same as the statute law of this state. That presumption prevails as to the common law, but does not obtain as to statutory enactments. First Nat. Bank v. Nat. Broadway Bank, 156 N. Y. 472, 51 N. E. 398, 42 L. R. A. 139; International Text-Book Co. v. Connelly, 206 N. Y. 200, 99 N. E. 722, 42 L. R. A. (N. S.) 1115; Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48, 33 Am. Rep. 491; Harris v. White, 81 N. Y. 532; Zeltner v. Irwin, 25 App. Div. 228, 49 N. Y. Supp. 337.

[3] We must therefore presume, in the absence of any evidence on the subject, that the common law and common equity governed the relations between Mrs. De Niord and Miss Campbell, and there is nothing by way of statute which would prevent Miss Campbell at any time enforcing the oral agreement between herself and Mrs. De Niord to convey the property in question whenever required so to do. In other words, the trust, although only evidenced by parol evidence and written receipts, was nevertheless valid and enforceable at common law and in this case, when, therefore, Mrs. De Niord conveyed the property to Miss Campbell, she was doing only what, in law, equity, and good conscience, she was bound to do.

[4] We are at a loss, too, to see how the general creditors of Mr. De Niord can claim any right or interest in the property. The money of Miss Campbell was not loaned to Mr. De Niord. It was given him for a specific purpose. It was paid to him to use as the agent of Miss Campbell, or possibly as the agent of his wife. Whether as the agent of Miss Campbell or of Mrs. De Niord makes no difference in this case, for, whichever way it may be treated, the legal result is the same. Mr. De Niord was bound to devote the money to the very purpose for which it was given to him. It was impressed with a trust for that purpose. If, instead of using some of the identical funds for purchasing the property, he in fact used other moneys which came to his hands, the creditors were in no worse condition on that account than if he had taken the identical currency paid him by Miss Campbell. The trust imposed to devote the amount of money received from Miss Campbell to the acquisition of the property was not destroyed because he may

have temporarily used some of it for other purposes. The duty remained the same.

[5] If, however, we should assume for the purposes of this action that Mr. De Niord in law and in fact became a debtor, instead of a trustee, for the funds furnished by Miss Campbell, then, when he paid money for the acquisition and maintenance of the Point Abino property, he was simply paying what he owed. All that could be claimed for the transaction by the trustee in bankruptcy is that such payment amounted to an unlawful preference of one creditor over another under the provisions of the United States Bankruptcy Act. In order, however, to enable a trustee in bankruptcy to reach preferential payments, such payments, under the act, must have been made within four months prior to the insolvent having been adjudicated a bankrupt. These payments were made and the property acquired in March, 1910, while Mr. De Niord was adjudged a bankrupt in June, 1914. So it will be seen that the plaintiff cannot succeed in this action upon the theory that the money advanced by Miss Campbell made her a creditor of the bankrupt, and his expenditure of these funds amounted to an unlawful preference.

In whatever light we view the facts, we think the plaintiff has failed to make out a case against any of the defendants. The complaint is therefore dismissed, with costs to the defendants Mrs. De Niord, Miss Campbell, and to the People's Bank, represented by Mr. Mitchell.

So ordered.