LOTUS N. SOUTHWORTH, as Trustee in Bankruptcy of the REMINGTON AUTOMOBILE AND MOTOR COMPANY, Respondent, v. ANDREW D. MORGAN, Appellant.

Corporations — liability of stockholder in corporation organized under laws of foreign state, to pay assessments on his stock, to be determined by laws of that state — in absence of evidence the common law of such state is presumed to be the same as that of this state — when stockholder in New Jersey corporation not liable for difference between par value of his stock and price paid therefor.

1. Although the liability of a stockholder in a corporation formed under the laws of another state to pay an assessment on stock held by him is to be determined by the laws of that state, the courts of this state cannot take judicial notice of either the language or interpretation of the laws of that state, and in the absence of evidence the common law of such other state is presumed to be the same as the common law of New York.

2. A New Jersey corporation, in which the par value of shares of stock was $100, authorized the issue of certain shares at $25 each. Defendant purchased the stock at that price under an agreement with the corporation that this sum was in full payment therefor. The corporation having become bankrupt, the United States District Court granted an order directing an assessment upon defendant of $75 per share to meet the obligations of creditors and the trustee in bankruptcy brought suit to recover the amount of such assessment. *Held,* that the regularity and validity of the proceeding in the United States District Court and its conclusions cannot be attacked in this action; but the existence or non-existence of an obligation on the part of the defendant to pay the assessment was not within the subject-matter of which that court took jurisdiction. In the absence of evidence of the laws of New Jersey and under the principles of the common law, there appears no charter or statutory prohibition against the issuance of the shares of the capital stock for less than their par value, and no statutory mandate that the shares shall be deemed issued and held subject to the payment of such value; hence the subscription, as expressed in the agreement between the defendant and the corporation, was completely fulfilled by the payment in full of the sum it bound him to contribute, and therewith his liability to. the corporation or its creditors terminated.

*Southworth* v. *Morgan,* 143 App. Div. 648, reversed.

(Argued March 22, 1912; decided April 30, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 10, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Howard C. Wiggins* and *A. D. Morgan* for appellant. No contractual or statutory liability was alleged or proven. (*Thatcher* v. *Morris*, 11 N. Y. 437; *Otis* v. *Harrison*, 36 Barb. 216; *Knickerbocker Trust Co.* v. *Iselin*, 185 N. Y. 54; *Ruse* v. *M. B. L. I. Co.*, 23 N. Y. 522; *Christensen* v. *Eno*, 106 N. Y. 97; *Thompson* v. *Knight*, 74 App. Div. 316; *Bostwick* v. *Young*, 118 App. Div. 490; *Rathbone* v. *Ayer*, 84 App. Div. 186; *Stoddard* v. *Lum*, 159 N. Y. 273; *Glenn* v. *Garth*, 133 N. Y. 18.)

*L. N. Southworth* and *George E. Dennison* for respondent. A "contractual" or "common-law liability" was alleged and proven. (*Hood* v. *McNaughton*, 54 N. J. L. 425; *Witherbee* v. *Baker*, 35 N. J. Eq. 501; *Stoddard* v. *Lum*, 159 N. Y. 265; *Knickerbocker Trust Co.* v. *Iselin*, 185 N. Y. 54; *Lang* v. *Lutz*, 78 N. Y. Supp. 200; 180 N. Y. 254; *Lowery* v. *Inman*, 46 N. Y. 119; *Howarth* v. *Angle*, 162 N. Y. 179; *Thompson* v. *Knight*, 74 App. Div. 316; *Close* v. *Potter*, 155 N. Y. 150; *Sawyer* v. *Hoag*, 17 Wall. 610.)

COLLIN, J. The plaintiff, trustee of the bankrupt corporation, Remington Automobile & Motor Company, seeks to recover from the defendant a sum unpaid, as plaintiff alleges, upon a subscription by the defendant for two shares of the capital stock of the corporation.

The trial court found as facts: The bankrupt was organized in 1900 under the laws of New Jersey. Its authorized capital stock was $250,000, divided into twenty-five hundred shares of the par value of $100 each. Soon

after its incorporation, the board of directors adopted a resolution as follows: " *Resolved,* that for the purpose of securing a local interest in the Remington Automobile & Motor Company on the part of the citizens of Ilion (N. Y.) that 200 shares of the stock be issued, to be sold at $25 per share, and that the proceeds of such sale be placed in the treasury to be used for regular expenses." Thereafter, in pursuance of the resolution, the general manager and secretary of the corporation presented to the defendant a writing which contained the agreements that the plant of the corporation was to be located and its business to be carried on at Ilion, and that the defendant would purchase two non-assessable shares of the capital stock of the corporation at $25 for each share and no more would ever have to be paid upon them. The defendant signed the agreement and purchased the two shares of stock upon the distinct understanding and agreement made between the defendant and the general manager and secretary of the corporation that $25 per share fully paid for the stock. He paid $50 for the two shares of stock at the time he received them. The corporation located its plant at Utica, New York, and not at Ilion. In December, 1902, the company was adjudged a bankrupt, and in April, 1906, the United States District Court granted an order directing a call or assessment upon the defendant and others of $75 per share to meet the deficiency in the assets of said corporation to meet the obligations of its creditors, said assessments to be paid on or before July 1, 1906, and the defendant was duly served with a copy of said order. The court found as a conclusion of law that the plaintiff was entitled to recover the sum of $150, a conclusion which the facts found do not support.

The liability of the defendant is to be determined by the law of the state of New Jersey. That state, through its laws, gave the corporation its existence, powers, liabilities and the limits within which it was free to act,

and a citizen of this state, who became a shareholder in it, entered into contract relations, the extent and obligation of which depend upon those laws, in so far as they do not violate a statute or the settled public policy of this state. (*Lowry* v. *Inman*, 46 N. Y. 119; *Hancock National Bank* v. *Ellis*, 166 Mass. 414; *Molson's Bank* v. *Boardman*, 47 Hun, 135.) The relevant laws of New Jersey are not disclosed or laid before us by the printed record; nor do the findings make known the provisions of the charter of the bankrupt other than that stated relating to the authorized capital stock. We are confined to the case as the record presents it. The laws of other states are facts which must be alleged and proved and of which we cannot take judicial notice either in their language or their interpretation. (*Genet* v. *Del. & Hud. Canal Co.*, 163 N. Y. 173, 177; *Hancock National Bank* v. *Ellis*, 166 Mass. 414.) In the absence of those facts we must presume that the common law of New Jersey is the same as the common law of New York. (*Ruse* v. *Mut. Benefit Life Ins. Co.*, 23 N. Y. 516, 522.)

It is urged by the respondent, at this point, that the order of the United States District Court directing the assessment of the shares of the defendant conclusively determined the validity and the amount of the assessment. It is true that the regularity and validity of the proceeding in that court and its conclusions cannot be attacked in this action; but the existence or non-existence of an obligation on the part of the defendant to pay the assessment was not within the subject-matter of which that court took jurisdiction. To enable the plaintiff to enforce the liability of the delinquent shareholders to the extent only which the deficiency in the corporate assets required and to effect parity of contribution between them it was necessary that an account of the assets and debts, of the entire amount of the capital remaining unpaid upon the issued shares, and the part of the face value of his shares unpaid by each stockholder should be

taken, and the aggregate assessment required equitably rated by the court, and it is upon those issues that its order is beyond attack in this action. (*Great Western Telegraph Co.* v. *Purdy*, 162 U. S. 329; *Howarth* v. *Angle*, 162 N. Y. 179.) In the former case the court, speaking of an analogous order of a court of Illinois, said: "But the order was not, and did not purport to be, a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defense which he might have to an action upon that contract." (p. 337.) The respondent does not contend that the charter provision dividing the authorized capital stock into shares "of the par value of $100 each" prohibited the creation of an actual share or interest upon a consideration less than $100., or secures to the creditors or their representative the right of collecting upon each share, as the discharge of the corporate debts demands, the difference between the consideration and $100.

Inasmuch as no statute of the state of New Jersey, nor provision of the charter of the corporation relative to the liability of the defendant, was proven, we turn to the common law, remarking parenthetically, however, that we have not been referred to and have not found any domestic statute which prescribes, as a condition to the exercise here of the rights derived from the state of New Jersey that the shareholders shall be liable to the creditors or their representative up to the nominal value of their stock, and there is, therefore, no statutory, as there is no charter, prohibition against the issuance of the shares of the capital stock for less than their par value as named in the charter, and no statutory mandate that the shares shall be deemed issued and held subject to the payment of such value. Nor do the principles of the

common law of this state work such results. In *Christensen* v. *Eno* (106 N. Y. 97) the action was brought by a judgment creditor of an insolvent corporation organized under the laws of Illinois to recover forty per cent of the authorized par value of $100 each of twenty-five shares of the stock of the company issued to but unsubscribed for by the defendant, upon which the forty per cent was not paid, but, as a gratuity, was credited as paid, when the stock was issued. Judge ANDREWS, writing for this court, which reversed the judgment in favor of the plaintiff, said (citing authorities): "But the liability of a shareholder to pay for stock does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute, and in the absence of either of these grounds of liability, we do not perceive how a person to whom shares have been issued as a gratuity has, by accepting them, committed any wrong upon creditors, or made himself liable to pay the nominal face of the shares as upon a subscription or contract." (p. 102.) The principles which determined our judgment in that case were reaffirmed in *Christensen* v. *Colby* (110 N. Y. 660). In the case at bar, no statute supports the alleged liability of the defendant, and the express agreement between the corporation and the defendant was that the defendant should pay twenty-five per cent of the nominal value of the shares and no more. The respondent contends, however, and therein he has been successful in the courts below, that the creditors of the corporation represented by the plaintiff, have the right to compel the payment of the unpaid seventy-five per cent, because the capital stock is a trust fund for the security of the creditors, and that a liability in their favor to the extent of the unpaid part of the nominal value of the actual shares exists and can be enforced. Such contention availed the plaintiff in the *Christensen* case until it reached this court, the General Term saying therein that the practical effect of the transaction was to

take out of the assets, to which the creditors were entitled, the forty per cent indorsed as paid upon the stock, when in fact it was not paid. It is strenuously urged that this case is not controlled by the principles which decided the *Christensen* case, for the reason that the defendant subscribed for the two shares of the capital stock, while in the *Christensen* case the stock certificate was merely issued to and accepted by the defendant. The subscription, as expressed in the agreement between the defendant and the corporation, has been completely fulfilled by the payment in full of the sum it bound him to contribute and therewith his liability to the corporation or the creditors terminated, unless there issued from the trust fund doctrine, through implication, a contract which, in the paramountcy given it by the fact that it was the irresistible product of the law, nullified the expressed stipulation that $25. was the whole sum to be paid upon each share, and substituted in its place the requirement that, as to the creditors, there should be paid $100 or so much thereof as the satisfaction of their demands made necessary. . That doctrine has not such potency. Its peculiar vigor is, that contrary to the common law of England, it secures to the creditors of insolvent corporations or their representatives the right of enforcing subscriptions for shares of which the corporation has deprived itself by release or defeasance. It declares that the capital or capital stock of a corporation is a substitute for the personal liability which subsists in individual or partnership undertakings and is a fund set apart as a security for the payment of the corporate debts. The capital or capital stock which it thus segregates is not the capital stock authorized or named in the charter of the corporation. If it were the members would be bound by the doctrine to contribute on account of it the sum within its named value needed to pay the debts of the insolvent corporation. The statement in the charter does not create a security for the creditors. It creates authorized or poten-

tial capital stock and shares which, transferred into actual shares through the acquisition of subscribing members and their payments, produces the money or property which, put into a single corporate fund, is the actual capital or capital stock on which the business is undertaken and the assets or fund contemplated by the trust fund doctrine which the directors or stockholders may not lawfully diminish by appropriating or squandering it or giving it away. And as there is not a fund or security in the nominal or potential shares, there is none in the excess of the nominal value over the subscribed value of the shares. The subscription agreements, as they are enforceable through their express provisions or implication or statutory conditions, are the sources and the measure of the duty of the subscribers. (*Christensen* v. *Eno*, 106 N. Y. 97; *Burrall* v. *Bushwick Railroad Co.*, 75 N. Y. 211.) The doctrine further declares that unpaid subscriptions are a part of the capital and that a subscriber cannot be discharged to the injury of creditors by arrangement or device to which creditors do not give their assent and by which he is to pay less than his subscription. (*Stoddard* v. *Lum*, 159 N. Y. 265; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Hazard* v. *Wight*, 201 N. Y. 399.) The doctrine does not create or nullify subscriptions. It lays hold of the assets of an insolvent corporation, and in doing that it compels subscribers to fulfill their legal obligations and perform their legal duties; but it does not beget those duties or obligations; it does not make unlawful or invalid a subscription which, apart from it, was valid and lawful. The question with it is, has the subscriber fully performed the subscription agreement as it in fact and in law exists, and an affirmative finding renders it inapplicable and inoperative. In the case at bar there were not statutory conditions upon which the shares might be owned. The agreement between the defendant and the corporation expressed with completeness the obligation and liability

of the defendant for his shares. He has fulfilled the obligation and thereby destroyed the liability. The trust fund doctrine is inapplicable and the findings of fact do not constitute a cause of action.

We have not considered or determined either the manner or the extent in which a statute of New Jersey, inimical to the express agreement of the corporation and the defendant, would through implication affect it, or the effect of the statement of the corporation that it would locate its plant and carry on its business at Ilion, because the record submitted to us does not present those questions.

The judgment should be reversed and a new trial granted, costs to abide the event.

HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; CULLEN, Ch. J., concurs in memorandum, as follows:

CULLEN, Ch. J. I concur on the sole ground that, as shown in the opinion of COLLIN, J., the question involved in the appeal is settled by the authority of the previous decisions of this court. Were it an original one I should reach a contrary conclusion.

Judgment reversed, etc.