INTERNATIONAL TEXT BOOK COMPANY, Appellant, *v.*
EDWARD CONNELLY, Respondent.

Infants — necessaries — estoppel — when contract for course of
instruction in correspondence school not binding upon an infant
— ratification — statutes of other states must be proved — in
absence of such proof the common law is presumed to prevail
— contract made in foreign state to be performed in this state
must be governed by laws of this state.

1. The laws of foreign nations, with the exception of England
prior to our independence, are facts to be alleged and proved. The
same is true of the statutory law of the various states of the
Union other than our own. In the absence of proof on the subject,
the common law is presumed to prevail in all the states in which it
is the foundation of their jurisprudence, but not including those
states which inherited or adopted the civil law. This is the well-
settled law of this state.

2. An infant living with his father or guardian who is able and
willing to furnish him with every thing suitable and necessary to
his position in life, cannot make a binding promise to pay even for
necessaries.

3. Defendant, an infant, a resident of this state, entered into a
contract with plaintiff, a corporation organized under the laws of
Pennsylvania, having its principal office in that state, by which he
represented that he was twenty-one years old at that time, and
wherein he agreed to pay a sum named therein, in installments, for
a scholarship in plaintiff's course of instruction to be completed
within five years, in "Complete Steam Engineering." He did not,
so far as appears, receive any instruction or derive any benefit from
the contract after he was twenty-one years of age, although he
thereafter paid an installment which became due before that time.
*Held*, that the contract being executory in form and unexecuted in
fact infancy was a defense. That such a course of instruction was
not a necessary within the meaning of the law. That defendant is
not estopped from pleading infancy by reason of his representation
in the contract that he was of age at the time it was made. That
defendant did not, upon the facts proven and found, ratify his con-
tract by a payment thereon soon after he became of age.

4. Upon examination of the facts, *held*, that the contract, even if
made in the state of Pennsylvania, was to be performed by both

parties substantially in, and should be governed by, the laws of this state.

*International Text Book Co.* v. *Connelly*, 140 App. Div. 939, affirmed.

(Argued June 19, 1912; decided October 1, 1912.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 16, 1910, which affirmed a judgment of the Monroe County Court affirming a judgment of the Municipal Court of the city of Rochester in favor of defendant entered upon a dismissal of the complaint.

The plaintiff is a stock corporation organized under the laws of the state of Pennsylvania, with its principal office at the city of Scranton in that state. According to its charter it was formed " to originate, write, compile, illustrate, edit, publish and sell instruction papers, textbooks, drawing plates, periodicals, magazines, pamphlets, articles, and letters for the dissemination of literary, technical, educational and other information," etc. It carries on international correspondence schools in many states, " giving instruction by correspondence through the mails and otherwise to such persons as may desire the same, in mathematics, physics, the arts and sciences, English and foreign languages and in all subjects constituting a technical, scientific, classical or academic education  *  *  *." It has agencies in this and other states to solicit persons to contract with it " for such correspondence instruction." For many years it has maintained in this state a system of organized canvassing, and now has five district and thirty division offices here. Each district office is in charge of a district superintendent who has under him a corps of plaintiff's representatives whose duties are to seek out persons desiring instruction and to induce them to subscribe therefor. The subscription papers are addressed to the plaintiff at Scranton and are delivered with the initial payments by

the solicitor to his division superintendent, who forwards the same to the plaintiff at Scranton, and if it is accepted the plaintiff enrolls the subscriber as a student in the course selected by him and sends him by mail from Scranton a counterpart of the subscription paper and a certificate of enrollment, but "if it rejects the same it returns to him the amount so paid." Instruction papers with directions how to commence and pursue his studies are sent to the student by mail from Scranton. Such bound volumes and outfit as his contract calls for are lent him by the plaintiff, the delivery being made either direct from Scranton or through a division office in this state. The student sends his papers by mail to the plaintiff at Scranton, and after they are corrected they are returned to him through the mail. All initial payments are deposited by the division superintendent in his own name in some bank in the city where his office is located, and subsequent installments are collected by him and deposited in the same way. All sums paid are ultimately turned over to the plaintiff by the checks of the division superintendent. The plaintiff owns no real property in this state, but pays rent and office expenses, including salaries, wages, commissions and all other liabilities incurred by it within this state, by check direct from its Scranton office. The division offices are under the supervision of the district superintendent, and he "has the power to and does direct, regulate and superintend the management and conduct thereof and employ and discharge the division superintendent in charge thereof. Each division superintendent employs and discharges all other representatives of plaintiff in his division subject to the district superintendent's approval. * * *. The plaintiff gives to its students in this State cash commissions and premiums in consideration of their procurement of new subscriptions to it." It sells textbooks, drawing and other outfits, instruments, supplies and various publications to purchasers in this state and elsewhere. Draw-

ing and answer paper suitable for use by students in their respective courses is purchased by plaintiff's district and division superintendents in this state and sold here. Every division superintendent and every representative in this state is required by plaintiff to be qualified to give instruction in mathematics to its students, and assistance in mathematics is given by them in such division offices to such students as desire the same. "A tutor is employed by plaintiff who gives such assistance in mathematics at the Rochester division office on Tuesday and Thursday evenings of each week from seven to nine o'clock. He is paid therefor direct from Scranton. Except as aforesaid the school of plaintiff is located at Scranton, Pa., and no branch is located in this State. Except as aforesaid the teachers and superintendents in such schools reside and perform their duties at Scranton as aforesaid and do not perform any such duties in this State. There are now more than three hundred students enrolled in the Rochester division" where the defendant subscribed. The plaintiff's division superintendent at Rochester has a stenographer to assist him who is paid by him, but the amount is repaid by plaintiff as an item in his expense allowance. "On the glass door of the Rochester division office appears the words 'The International Correspondence Schools of Scranton, Pa. Enrollment Office.' There is a board sign above the entrance to such office which reads 'Local Office International Correspondence Schools of Scranton, Pa. International Textbook Co., Proprietors.'" Plaintiff does all its business at Scranton aforesaid unless the foregoing facts establish that it is doing business in this State.

The defendant resides at the city of Rochester in this state, and on the 2d of August, 1906, at that place he subscribed for a scholarship in the plaintiff's course of correspondence instruction in "Complete Steam Engineering." The subscription paper was forwarded by the division superintendent to the Scranton office, where it

was accepted on the sixth of August and a counterpart of the contract sent to the defendant by mail. He paid $5.00 down to one White, the solicitor and representative, who gave him a receipt for that amount "on account of scholarship as per written contract." The receipt was on a printed form furnished by the plaintiff and was signed "International Textbook Company, Proprietors of the International Correspondence Schools, Elmer H. La Wall, Treasurer, by J. A. White, representative," all of which was printed except the signature of White. According to the contract embodied in the subscription paper the defendant was to pay $5.00 each month until the sum of $75.20 in all was paid. On August 6, 1906, he paid $5.00 more to the division superintendent to apply on the price of such scholarship. By the terms of the contract $5.00 became due and payable on October 8th, 1906, and that amount was paid to said superintendent on December 5th, 1906. The further sum of $5.00 became due and payable on November 8th, 1906, but it was not paid and no further payment having been made by the defendant the plaintiff elected to treat the entire balance as due and payable as permitted by the contract. The defendant became twenty-one years of age on the 20th of August, 1906, although in the subscription paper signed by him on the second day of that month his age is stated as twenty-one. After default in payment, upon demand of the plaintiff, the defendant returned the volumes loaned to him under the contract but did not pay fifteen cents for the cost of transportation as he had agreed therein. The plaintiff paid that sum, received the books and now has them in its possession. It does not appear that the defendant received any instruction or derived any benefit from the contract after he became of age.

On 4th of March, 1908, the plaintiff commenced this action against the defendant in the Municipal Court of the city of Rochester to recover a balance of $60.35

alleged to be due under the contract. The defendant in his answer pleaded infancy, *ultra vires* and noncompliance by plaintiff with sections 15 and 16 of the General Corporation Law and section 181 of the Tax Law. Upon the trial no evidence was given but the facts were stipulated substantially as stated, although in greater detail. Judgment was rendered by the Municipal Court in favor of the defendant dismissing the complaint, and upon appeal to the County Court of Monroe county the judgment was affirmed. Upon further appeal the judgment of the County Court was in turn affirmed by the Appellate Division, one of the justices dissenting and, leave having being duly given, the plaintiff appealed to this court.

*John H. Agate* and *David C. Harrington* for appellant. The defense of infancy cannot prevail, since defendant's capacity to contract depends upon the laws of Pennsylvania, where the contract was made. Judicial notice thereof will not be taken, nor can they be assumed to be the same as ours. Defendant was bound to allege that this defense was good by the law of Pennsylvania. He made no such averment. (*Union Nat. Bank* v. *Chapman,* 169 N. Y. 538; *Thompson* v. *Ketcham,* 8 Johns. 189; *Cutler* v. *Wright,* 22 N. Y. 472; *Moore* v. *Coler,* 106 App. Div. 331.) The defense of infancy cannot prevail since defendant has ratified the contract. (*Hodges* v. *Hunt,* 22 Barb. 150; *Taft* v. *Sergeant,* 18 Barb. 320; *Conklin* v. *Field,* 37 How. Pr. 455; *Henry* v. *Root,* 33 N. Y. 526; *Beardsley* v. *Hotchkiss,* 96 N. Y. 201; *Merchants' Ins. Co.* v. *Grant,* 2 Edw. Ch. 544; *Eagan* v. *Scully,* 29 App. Div. 617; 173 N. Y. 581; *Everson* v. *Carpenter,* 17 Wend. 419, 421; *Aldrich* v. *Funk,* 48 Hun, 367.) The contract was for a necessary. (*Gay* v. *Ballou,* 4 Wend. 403; *Gray* v. *Sands,* 66 App. Div. 572; *Murphy* v. *Holmes,* 87 App. Div. 366; *Gladding* v. *Follett,* 2 Dem. 58; 30 Hun, 219; 95 N. Y. 652; *Goodman* v. *Alexander,* 165 N. Y. 289;

13

*Rice* v. *Butler*, 25 App. Div, 388; 160 N. Y. 578; *Ryan* v. *Boltz*, 16 J. & S. 152; *Atchison* v. *Bruff*, 50 Barb. 381.)

*Smith O'Brien* for respondent. Appellant cannot recover because respondent was an infant .when contract was made, and contract was not ratified or made valid in any way by respondent after he became twenty-one years of age. (*Parsons* v. *Teller*, 188 N. Y. 326; *R. T. L. Co.* v. *Sanford*, 24 S. W. Rep. 587; *Eagan* v. *Scully*, 29 App. Div. 617; *Green* v. *Green*, 7 Hun, 494; *O'Rourke* v. *Hall*, 38 App. Div. 534; *Foley* v. *M. L. Ins. Co.*, 64 Hun, 69; *Walsh* v. *Powers*, 43 N. Y. 27; *Green* v. *Green*, 69 N. Y. 553.) The contract was made in the state of New York. (*Register Co.* v. *Griswold*, 143 App. Div. 807.) In any event, the contract in question was to be performed in the state of New York, and the place of performance governs as to the law applicable to the contract. (2 Kent's Com. 460; *Jewell* v. *Wright*, 30 N. Y. 264; *Jacks* v. *Nichols*, 5 N. Y. 178; *Dickinson* v. *Edwards*, 77 N. Y. 587.) It is stated that the education contracted for is a necessary. If so, it had to be pleaded and proved as such, and that the infant had no parents or guardian, or if he had they were unable to discharge their obligation in that regard. Appellant failed to do this and the point is not available to it. (*Gray* v. *Sands*, 66 App. Div. 572; *Murphy* v. *Holmes*, 87 App. Div. 366.)

VANN, J. At common law a male infant attains his majority when he becomes twenty-one years of age and all unexecuted contracts made by him before that date, except for necessaries, while not absolutely void are voidable at his election. The contract in question was executory in form and unexecuted in fact, and as the defendant was under age when it was made, his infancy is an absolute defense unless an answer is found in some of the questions raised by the learned counsel for the plaintiff.

It is insisted that the contract was for necessaries and,

hence, was binding on the defendant although he was an infant.  What are necessaries depends on circumstances to some extent and frequently involves a question of fact.  While the facts in this case were stipulated, the stipulation does not state that the contract was for necessaries nor any circumstances from which that inference could be drawn as one of fact.  The word "necessaries" as used in the law is a relative term, except when applied to such things as are obviously requisite for the maintenance of existence, and depends on the social position and situation in life of the infant as well as upon his own fortune and that of his parents.  What would be necessary in a legal sense for an infant with ample means of his own might not be so for one with no means at all.  The question in this case depends on the circumstances and situation in life of the defendant and they are not set forth in the stipulation, although it expressly states that it is " a full, complete and true statement of all the facts upon which the determination of the controversy and questions in difference depends."

A proper education is a necessary, but what is a proper education depends on circumstances.  A common school education is doubtless necessary in this country, because it is essential to the transaction of business and the adequate discharge of civil and political duties.  A classical or professional education, however, has been held not to come within the term.  (*Middlebury College* v. *Chandler*, 16 Vt. 683; *Turner* v. *Gaither*, 83 N. C. 357.)  Still, circumstances not found in the cases cited may exist where even such an education might properly be found a necessary as matter of fact.  Moreover, an infant living with his father or guardian who is able and willing to furnish him with every thing suitable and necessary to his position in life, cannot make a binding promise to pay even for necessaries.  As was said by Chancellor WALWORTH in a case frequently cited: "An infant is liable for necessaries, suitable to his rank and condition, when

he has no other means of obtaining them except by the pledge of his own personal credit. But if he is under the care of a parent or guardian, who has the means, and is willing to furnish him what is actually necessary, the infant can make no binding contract for any article whatever, without the consent of his legal protector and adviser." (*Kline* v. *L'Amoreux*, 2 Paige, 419, 420.) The burden was upon the plaintiff to show that what it agreed to provide for the defendant was a necessary, and it was "bound, at his peril, to inquire and ascertain the real circumstances of the" defendant "and whether he is in a situation to bind himself by a contract for necessaries." (Id.) No proof on the subject was furnished. For aught that appears the defendant resided with a parent or guardian able and anxious to give him any kind of an education that he desired and that in defiance of parental authority he perversely took his own course to his injury and the overthrow of family discipline. In the absence of all facts relating to any of these subjects we think that a course of instruction in " Complete Steam Engineering " with five years within which to finish it was not a necessary within the meaning of the law.

The plaintiff also claims that the defendant is estopped from pleading his infancy because he represented in the subscription paper which constituted the contract that he was twenty-one years old when he signed it. This position cannot be sustained. The doctrine of estoppel is rarely if ever applied to infants. The action is on contract, not in tort. There is no suggestion of false representation or fraud in the complaint or stipulation, except that the latter sets forth that the defendant signed the subscription paper which stated his age as twenty-one years. No other representation was made. While an infant is liable for his torts, the action must rest solely on the wrong committed by him. The complaint in this action rests wholly on the written contract which is set forth at length, and the fact that the contract contains

the statement as to age, with neither allegation nor proof that it was made with intent to defraud, does not "fix the character of the action as one *ex delicto.*" (*Sparman* v. *Keim*, 83 N. Y. 245.) It is well settled in this state that in an action upon a contract made by an infant he is not estopped from pleading his infancy by any representation as to his age made by him to induce another person to contract with him. (*Studwell* v. *Shapter*, 54 N. Y. 249; *New York Building Loan Banking Co.* v. *Fisher*, 23 App. Div. 363; *Brown* v. *McCune*, 5 Sandf. Super. Ct. 224.) To hold otherwise would in many cases deprive infants of the protection extended to them at an age when the mind and judgment are conclusively presumed to be immature and they need to be shielded from their own imprudence and folly. It would virtually overthrow the law upon the subject as it has existed for time out of mind.

The next claim of the plaintiff is that the defendant ratified the contract by acquiescence and by making a payment of $5.00 on the contract about three and one-half months after he became of age.

We have held that "mere acquiescence for three years after arriving at age without any affirmative act was not a ratification." (*Green* v. *Green*, 69 N. Y. 553, 557.) "Mere acquiescence, however long, if short of the statutory period of limitations, is not sufficient, and an act of confirmation, if not equally solemn with the deed, must be of such a solemn and undoubted nature, of such a clear and unequivocal character, as to establish a clear intention to confirm the deed after a full knowledge that it was voidable." (*Irvine* v. *Irvine*, 9 Wall. (U. S.) 617, 627.) After the last payment was made on the 5th of December, 1906, the defendant refused to pay anything more, although, as alleged in the complaint, the plaintiff demanded the monthly payments as they became due from time to time. Prior to the 22d of January, 1907, he returned the property lent him by the plaintiff under the

contract, and it does not appear that he derived any benefit from the contract after he became of age or that he retained any benefit previously derived therefrom which could be returned. The claim of ratification, therefore, rests substantially on the fact that the defendant made a payment on an unexecuted contract between three and four months after he became of age.

· "The defense of infancy is established by the decision and findings of the judge, with no fact in avoidance of it." (*Walsh* v. *Powers*, 43 N. Y. 23, 27.) There was no express finding of fact in this case, but the complaint was dismissed. No fact in avoidance is presumed to have been found, and the presumption is that the trial court found that there was no ratification. (*Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.*, 199 N. Y. 268.) Ratification depends on intention and payment is merely evidence of intention. Assuming that the single payment of $5.00 made a few months after the defendant became of age when considered with such acquiescence as there was, would have supported a finding of fact that he thereby intended to ratify and did ratify the contract, there is no finding or stipulation to that effect. Payment was not ratification as matter of law. As was said by the Chief Judge in *Parsons* v. *Teller* (188 N. Y. 318, 326): "It is not the case of an executed contract, where failure of an infant to disaffirm within a reasonable time after becoming of age would of itself operate as a ratification. It required affirmative action by the deceased to impose the obligations of the contract upon her. The alleged ratification in this case is based on the fact that during Mrs. Smith's life she continued to make payments under the agreement. * * * The record is devoid of evidence, except the mere fact of the payments, tending to show that the deceased intended to recognize the legal obligations of the contract of 1890, and these payments, under the circumstances, we think, were insufficient for the purpose." Hence, payment does not necessarily show

intention to ratify.   It is not like an act in the nature of
a fraud, such as the acceptance of benefits after arriving
at age and then attempting to repudiate the contract.
No benefit was accepted or retained by the defendant
after he became twenty-one.   He wrote nothing, said
nothing and did nothing which bore on the question of
intention, except to make one payment, which may have
been owing to his sense of honor or gratitude on account
of the instruction received while under age.   As was said
by Chief Justice Nelson in *Millard* v. *Hewlett* (19
Wend. 301, 302): "The contract urged upon him was
never obligatory, or operative, as it has always been in his
power to admit or reject it.   It was not absolutely void,
because he had the option to enforce it against the defend-
ant; but it never was binding upon himself, as the defend-
ant could at no time have enforced it against him.   In
confirmation of this view we may refer to the doctrine
that requires an *express promise*, after full age, to bind
the infant in respect to a voidable contract to pay a debt
entered into before; a full acknowledgment or promise to
pay, or even actual payment of *part* will not render him
liable to pay the *whole debt*."   After citing authorities
the learned judge continued: "The reason is, that no legal
liability or ground of action, capable of being enforced in
a court of law, existed previously to the promise."

So it is said in 2 Page on Contracts, 1372: "By the
weight of authority the rule in ratification of an infant's
contracts, different from that in waiving the Statute of
Limitations, is that a mere acknowledgment that the
obligation has been incurred, or even a part payment
thereon, is not a ratification.   Even payment of interest,
part payment of principal, and a mere acknowledgment
of the debt, or a statement, 'I owe a debt, and you will
get your pay,' was held not to be a ratification.   *   *   *"
Mr. Greenleaf says: "An explicit acknowledgment of
indebtedness, whether in terms, or by a partial payment,
is not alone sufficient, for he may refuse to pay a debt

which he admits to be due." (2 Greenleaf's Evidence [16th ed.], § 368.) Many authorities are cited by the learned authors in support of this proposition.

The burden of proving ratification rests on the one claiming under a voidable contract of an infant. In this case some evidence was produced on the subject, but it was not conclusive. The trial court did not expressly find that there was a ratification and did impliedly find that there was no ratification. This is conclusive upon us, for we cannot find a fact even if we think the trial court should have found it.

Finally, the plaintiff claims that the contract was not made in this state but in the state of Pennsylvania and that there is no evidence that infancy is a good defense in that state. We think that the facts stated show that the contract wherever made was to be performed by both parties substantially in this state and that it should be governed by its laws. Our courts will not enforce the contract of an infant against him, even if technically it was completed by acceptance in another state, when his promise was not only made here but entire performance by one party and substantial performance by the other was to be made here. Otherwise it would be easy to deprive an infant of the protection which our law affords him on grounds of public policy. Moreover, even if it were a Pennsylvania contract and its laws were to govern as to capacity to contract (*Union National Bank of Chicago* v. *Chapman*, 169 N. Y. 538, 545), the presumption is that the common law of that state is the same as our own. There is no such presumption as to the statutes of a sister state, for they must be proved under proper allegations before the courts can take cognizance of them. The laws of foreign nations, with the exception of England prior to our independence, are facts to be alleged and proved. The same is true of the statutory law of the various states of the Union other than our own. In the absence of proof on the subject, however, the common

law is presumed to prevail in all the states in which it is the foundation of their jurisprudence, such as New York and Pennsylvania, but not including those states which inherited or adopted the civil law, such as Louisiana. Our courts will, therefore, presume that the common law of a sister state originally colonized from England or formed from territory ceded by England, is the same as our own, in the absence of evidence to the contrary. While this rule may not obtain in all the states having the common law of England as the basis of its system, it prevails in the most of them, and is the well-settled law of this state. (*Southworth* v. *Morgan*, 205 N. Y. 293, 296; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 496; *First National Bank* v. *National Broadway Bank*, 156 N. Y. 459, 472; *First National Bank of Meadville* v. *Fourth National Bank of N. Y.*, 77 N. Y. 320, 331; *People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182, 191; *Savage* v. *O'Neil*, 44 N. Y. 298, 301; *Ruse* v. *Mutual Benefit Life Insurance Co.*, 23 N. Y. 516, 522; *Sherrill* v. *Hopkins*, 1 Cow. 103, 109; *Holmes* v. *Broughton*, 10 Wend. 75, 79; *Abell* v. *Douglass*, 4 Den. 305, 309; *Starr* v. *Peck*, 1 Hill, 270; *Stokes* v. *Macken*, 62 Barb. 145, 149; *White* v. *Knapp*, 47 Barb. 549, 554; *Throop* v. *Hatch*, 3 Abb. Pr. 23; *Holmes* v. *Mallett*, 1 Morris (Iowa), 82; *Legg* v. *Legg*, 8 Mass. 99; 1 Elliott on Evidence, § 46; Lawson's Presumptive Evidence, 358; 1 Am. & Eng. Encyc. of Law [2nd ed.], 282.)

As no fact was found or conclusively proved to avoid the effect of infancy, which was pleaded by the defendant and admitted by the plaintiff, the complaint was properly dismissed and it is unnecessary to consider the other defenses relied upon by the defendant.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; GRAY, J., absent.

Judgment affirmed.