THOMAS EGNACZYK, an Infant, by Guardian ad Litem, Respondent, *v.* WILLIAM ROWLAND, Appellant.

County Court, Oneida County, ———— —, 1933.

*Albert V. Moore*, for the appellant.

*Searle & Searle*, for the respondent.

HAZARD, J. The action was in replevin, at least in form, although it does not appear that any bond was ever given or that the automobile involved was ever taken. There never was a trial, the facts having been stipulated. It seems that sometime in September, 1932, the plaintiff, concededly a minor, took or sent his automobile to defendant's garage for certain repairs, that they were completed by the 1st of January, 1933, and that their fair and reasonable value was sixty-nine dollars and thirty-four cents. It is undisputed that defendant offered to deliver the automobile upon payment of that amount, and it is also undisputed that the plaintiff has never paid that amount or any part of it. It seems that the defendant is holding the car, claiming the right so to do under section 184 of the Lien Law. Plaintiff, refusing to pay for the repairs which he ordered, has brought this action and succeeded in the court below.

We have thus the question presented as to whether a minor can take his automobile to a garage and order repairs thereon and when they are completed, refuse to pay therefor and demand that his repaired car can be turned over to him. It seems that the court below has decided that he can do just that. That decision rather definitely and emphatically shocks one's sense of justice and fairness and decency. If it is upheld it would lead to some curious results as apparently the repairs might go to any extent, even including an entirely new motor, for instance, as the amount of the repair bill would have no bearing upon the question involved.

Of course it is fundamental that, aside from necessaries, an infant may rescind his contract. There is nothing in the record in this case on the subject, and I think we must, therefore, assume that the automobile in question, and the repairs thereto involved, are not to be treated as "necessaries." (*International Text Book Co.* v. *Connelly*, 206 N. Y. 188.)

Generally, and I think almost universally, the rule above mentioned, that an infant may rescind his contract, is subject to the provision that he must surrender any benefits which he had received under the contract which he seeks to disaffirm. The principle was quoted from Kent's Commentaries by Judge HAIGHT in *Rice* v. *Butler* (160 N. Y. 578, on p. 582) succinctly as follows: "The privilege of infancy is to be used as a shield and not as a sword. He cannot have the benefit of the contract on one side without returning the equivalent on the other."

In that case plaintiff had purchased a bicycle upon contract and made some payments thereon and then returned the bicycle to the vendor and demanded repayment of the amount she had paid upon the contract. It was proven upon the trial that the deterioration and the use of the wheel while the plaintiff had it in her possession was equal to the value of the amount she had paid on the contract; and it was held by the Court of Appeals (reversing the Appellate Division) that plaintiff could not recover. A similar case with a similar holding is that of *Sparandera* v. *Staten Island Garage, Inc.* (117 Misc. 780), and the principle above referred to is restated in these words: "The right of an infant to avoid or rescind contracts is based on the incapacity to contract. However, where an infant disaffirms his contract, as in this case, he must restore or offer to restore to the party with whom he contracted, what he received thereunder." Numerous cases are there cited in support of that principle and later in the opinion the court uses this language, doubtless with the above declaration from Kent's Commentaries in mind, "Otherwise, he would be making use of the privilege of infancy as a sword, and not as a shield."

Keeping in mind Kent's illustration about the sword and the shield, and applying it to this case, it is very clear that the court below has permitted the infant plaintiff here to use his infancy as a sword and not restricted it to use as a shield. In other words, he seems to have approved of the plaintiff perpetrating what seems like a bald swindle by permitting him to deliberately order certain repairs to his car and then deliberately refuse to pay for them. There is nothing *defensive* about such a situation as that; on the contrary it is decidedly *aggressive*. I think the justice's decision was not right.

The case of *Wyatt* v. *Lortscher* (217 App. Div. 224) is cited as " controlling authority in the case at bar," but I do not agree with that contention and I do not think that a careful analysis of what was therein decided will support the contention. It is true that the right to enforce a real estate mortgage and some mechanics' liens as against a minor was denied, the minor having pleaded infancy, *but* it was held (p. 227) " upon disaffirmance, as just stated, the reciprocal duty arises to give back the consideration still in the infant's hands," and it was made clear that the rights of those who had improved the infant's property must be conserved and adjudicated. It was pointed out that some of the parties involved in that proposition were not before the court (p. 228), and that " in their absence the rights of the defendant cannot be fully adjusted," and the court continued (p. 228), " were all parties before the court, it may be that an equitable adjustment might be reached " in the manner indicated. The case, decides that " Defendant's plea of infancy is also effective against the plaintiff's claim based on mechanic's liens," but it does not anywhere say that the defendant, the infant, may hold and have his erstwhile vacant lot upon which a house has been built with the money, labor and material of others, without doing substantial justice and equity by them. What it does say (p. 229) is that " equities may exist in favor of those who furnished materials and their assigns in case they are able to show that the infant has been enriched thereby * * *. The evidence to determine the character and amount of such equities does not appear in the present record." A new trial was, therefore, granted, rather obviously to give those having claims against the property for its improvement a right to have their claims protected. I do not think the case is any authority at all for upholding such a swindle as is attempted to be perpetrated here.

There is no proof as to just what was done to or with this plaintiff's car, except that there was a stipulation made that a certain part of the above-mentioned total price was for labor and another part for material. Illustrative of the injustice which the judgment in the court below perpetrates, let us assume that what was done was, for instance, that a new carburetor had been put upon the car. The justice had undertaken to decide that the plaintiff may take the car with a new and good carburetor on it in the place of a worthless or defective one. Obviously this is unjust; and as above pointed out if that can be done, and the plaintiff can get away with it, there would be nothing in the world to prevent him from having an entire new motor put in his car or any other expensive

and radical repair done, and according to the decision of the court below, he may simply demand a delivery of his repaired and improved car and find a court which will award the possession to him. Such a holding is putting a sword in the minor's hand in the place of what was never intended to be anything but a shield, and I do not think it can be upheld.

I think judgment should, therefore, be reversed.