Louis S. McCulloch, Respondent, *v.* Carlisle Norwood, Receiver, etc., Appellant.

The dissolution of a corporation terminates an action then pending against it, and all subsequent proceedings therein are void unless the action be continued by order of the court as provided by the act of 1832, to prevent the abatement of suits by or against corporations (chap. 295, Laws of 1832), which order must require the representative or successor in interest of the defunct corporation to be substituted, and the action continued in his name, or that the defence be placed under his control.

If section 121 of the Code, providing for the continuance of an action after the death of a party, applies to an action against a corporation, it does not authorize the continuance of the action against the corporation, but before it can proceed requires the successor or representative in interest to be brought in.

As to whether the statute law of another State is to be presumed, in the absence of proof, to be the same as our own, *quære.*

Prior to the issuing of a policy of insurance upon a building, the applicant, by way of questions and answers, made statements in substance that he was the owner of the property, and that no other person was interested therein, but to a question as to incumbrances answered, " held by contract," which questions and answers were, by the terms of the policy, made a warranty. The applicant was in possession, holding the premises under a contract of sale from the owners. *Held,* that the statements were so qualified by the last answer, as to preclude the insurer from asserting a warranty of absolute ownership or exclusive interest; and that as that answer truthfully stated plaintiff's interest, there was no breach of warranty.

*McCulloch* v. *Norwood* (4 J. & S., 180) modified.

(Argued October 2, 1874; decided November 10, 1874.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, in favor of plaintiff, entered upon a case submitted under section 372 of the Code. (Reported below, 4 Jones & Spencer, 180.)

The facts submitted were in substance as follows:

On the 13th day of April, 1866, the Lorillard Fire Insurance Company issued to plaintiff a policy of insurance for the sum of $3,000, thus divided in the policy: " $2,000 on his stone building, $800 on his steam engine and apparatus therein, and $200 on his household furniture, clothing and books stored therein."

Prior to issuing said policy the company required plaintiff to answer in writing certain questions, which questions and answers were made a warranty and condition of granting said policy, and which were in part as follows:

" Question.— Is it (meaning the property aforesaid) owned and operated by the applicant?

" Answer. — Yes.

" Question. — Is any other person interested in the property? If so, state the interest.

" Answer. — No.

" Question. — Incumbrance : Is there any on the property ?

" Answer. — Held by contract."

At this time, and at the date of the fire, McCulloch was in full possession and absolute enjoyment of the property in question ; he held the real estate, including the buildings, which he used for a manufactory, under a contract of sale from the owners in fee, which provided for the delivery to him of a deed thereto on payment of $2,000, the consideration therefor, of which sum $500, the amount due at that time, had been paid. Of the personal property he was absolute owner.

On the 27th day of August, 1866, the said property was totally destroyed by fire. Due notice and proof of the fire and loss was made, and the loss was duly adjusted by the authorized agent of the company.

On the 2d day of January, 1867, plaintiff brought suit against said company in the Court of Common Pleas of the county of Cuyahoga and State of Ohio. The company appeared by attorney, and on or about the 12th day of December, 1867, a verdict was found for the defendant, and a judgment thereon duly entered. This judgment was reversed by the District Court and a new trial ordered. The decision of the District Court was affirmed by the Supreme Court.

In October, 1871, the company became insolvent, and the defendant was duly appointed receiver thereof. On October 24th, 1871, judgment was duly rendered dissolving said corporation and continuing the receivership of the defendant. The company continued to be represented in the Ohio suit by the same attorney and counsel who appeared for it when the action was originally begun, until the 14th day of May, 1872, when the cause came on for a new trial, when said attorney announced in open court that the company had been adjudged insolvent, and had been dissolved, and a receiver appointed by the Supreme Court of the State of New York ; and that, under instructions from said receiver, he .

no longer had any authority to appear in the case. This was the first information received by the plaintiff or his attorneys of the insolvency and appointment of a receiver. Thereupon, and after such statement, judgment was rendered in favor of plaintiff for the amount of the policy, interest and costs.

The questions submitted to the court were as follows:

" First. Is the judgment rendered against the Lorillard Fire Insurance Company, on the 14th day of May, 1872, valid against the receiver ? "

If this question was answered in the affirmative, it was stipulated that judgment be rendered against the receiver for the amount of the judgment with interest.

If this question was answered in the negative, then,

" Second. Was there such a breach of warranty as to his interest in the property insured, on the part of Lucius S. McCulloch, as to render said policy void ? "

If this question was answered in the negative, then judgment was to be rendered against the receiver for $3,000 with interest.

If answered in the affirmative, then judgment was to be rendered in favor of the receiver.

The first question was answered in the affirmative, and judgment perfected as stipulated.

*Carlisle Norwood, Jr.*, for the appellant. By the common law, upon the dissolution of a corporation, all suits pending for or against it abated. (A. & A. on Corp., § 779.) The rule of the common law prevails in this State, except in so far as it has been affected by statute. (Code, § 121; Laws, 1832, chap. 295; 3 Edm. Stat., 674.) Plaintiff was bound to make the assignee a party. (*Sedgwick* v. *Cleaveland*, 7 Paige, 287, 290 *et seq.*; *Deas* v. *Thorne*, 3 J. R., 544; *Requa* v. *Holmes*, 16 N. Y., 193.) A warranty in a policy of insurance must be literally complied with. (Ang. on F. and L. Ins., § 140; Flanders on F. Ins., 204; *De Halm* v. *Hartley*, 1 T. R., 343; *Jennings* v. *Chenango Mut. Ins. Co.*, 2 Denio, 75; *Ken-*

*nedy* v. *St. Lawrence Mut. Ins. Co.*, 10 Barb., 289; *Chase* v. *Ham. Ins. Co.*, 20 N. Y., 57; *Wall* v. *E. R. Mut. Ins. Co.*, 7 id., 370; *Lapping* v. *C. O. F. and M. Ins. Co.*, 58 Barb., 348; *Shoemaker* v. *G. F. Ins. Co.*, 60 id., 101; *Pierce* v. *Em. Ins. Co.*, 62 id., 636; *Bryce* v. *Lor. F. Ins. Co.*, Ct. App., Dec., 1873.)

*S. H. Seymour* for the respondent.　　The court in Ohio had acquired complete jurisdiction before the dissolution of the corporation and retained it.　(*Foot* v. *Stevens*, 17 Wend., 484; *Cheney* v. *Arnold*, 15 N. Y., 353; note to *Leavenworth* v. *Brockway*, 2 Hill, 201; Laws of 1832, chap. 295; 2 R. S. [5th ed.], 598, § 14; Code, § 121; *Stafford* v. *Williams*, 4 Denio, 182; *Dyckman* v. *Mayor, etc.*, 1 Seld., 434; *Sheldon* v. *Wright*, id., 497; *Bloom* v. *Burdick*, 1 Hill, 130; *B. and N. Y. C. R. R. Co.* v. *Brainard*, 5 Seld., 100; *Walker* v. *Wainwright*, 16 Barb., 486.)　Plaintiff committed no breach of warranty in his statements as to his interest in the property insured.　(21 Ohio St., 176–180; Flanders on F. Ins., 282; *Ætna F. Ins. Co.* v. *Tyler*, 16 Wend., 365.)

Rapallo, J.　We feel constrained to differ from the learned court below, on the question of the validity of the judgment rendered in the Ohio court, against the corporation of which the defendant is receiver, on the 14th of May, 1872. At that time the corporation was not in existence, it having been dissolved by a judgment, duly rendered by the Supreme Court of this State, on the 24th of October, 1871. And the defendant having been appointed receiver of its property and effects, the corporation had no longer any legal existence or capacity to be sued, or any property which could be subjected to a judgment to be rendered against it. All authority to appear in the case had been withdrawn from the attorneys who had formerly represented the dissolved corporation. These facts were announced in open court when the cause was called for trial on the 14th of May, 1872, but the court, nevertheless, allowed the plaintiff to proceed and take judg-

ment against the defunct corporation. That judgment is now sought to be enforced in the courts of this State against the receiver.

At common law it is very clear that such a judgment would be of no force. (See Angell & Ames on Corporations, § 779.) But it is claimed that, under section 121 of the Code and chapter 295 of Laws of 1832, the action was not abated by the dissolution of the corporation, and was properly allowed to proceed to judgment.

It seems to me to be conceded, on the part of the appellant, that there being no proof of the law of Ohio on the subject, it is to be presumed that the law of Ohio is the same as our own. That such a presumption exists in respect to statute law is a proposition by no means so clear as appears to be supposed. Expressions are contained in some of the opinions which have been cited favoring the position that the presumption exists with reference to purely statutory regulations, but there is no authoritative decision to that effect. It is difficult to find any reason upon which such a rule can rest, and when the question is distinctly presented we regard it as still open to examination.

Taking the concession, however, for the purposes of the present case, the question presented is the same as if the judgment now sought to be enforced against the receiver had been rendered in one of our own courts.

The elementary principle that no valid judgment can be rendered against a party who is not actually or constructively before the court has not been changed by any of the statutes cited. The provision that the action, etc., shall not *abate* by the death, etc., of a party do not permit it to proceed against the dead party, but require that his representative or successor in interest be regularly brought into court. Section 121 of the Code does not specifically refer to actions against corporations, but provides generally that: " No action shall abate by the death, marriage or other disability of a party, or the transfer of any interest therein, if the cause of action survive or continue. In case of death, marriage or disability of a

party, the court, on motion at any time within one year thereafter, or afterward on a supplemental complaint, may allow the action to be continued against his representative or successor in interest. In case of any other transfer of interest the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action."

·This section, it is very clear, if applicable, by analogy, to an action against a corporation does not sanction the idea that the action can be continued against the corporation after its death, but requires that before the action can proceed the representative or successor in interest should be brought in. He then has an opportunity to appear and defend by counsel of his own selection ; and the judgment, if adverse, is rendered against him, and not against his predecessor.

The other statute referred to (Laws of 1832, chap. 295) affords no sanction to the course of proceeding adopted in this case. The first section relates exclusively to actions brought *by* a corporation and pending at the time of its dissolution. In that single case the receiver is permitted to continue the action, using the name of the corporation or procuring his own to be substituted, by order of the court, subject to such order as the court may deem expedient in relation to the payment or security of costs. The second and third sections relate to actions brought by receivers of corporations appointed before their dissolution, but expressly prohibit the use of the name of the corporation if it has been dissolved before the bringing of the action. The fourth is the only section which relates to actions *against* corporations, and provides that if the corporation shall be dissolved during the pendency of the action the court shall have power, on the application of either party, to make an order for the continuance of the action, and the same may thereafter be continued until final judgment. Unless such an order be made there is nothing in our statutes interfering with the common-law rule that the dissolution of the corporation puts an end to the action, and that all subsequent proceedings

therein are void.  A special order for the continuance of the action is required on the assumption that judicial officers will perform their duty; and, before granting such an order, require the applicant to satisfy them that the proper parties will be represented in the action as continued.  This is, in substance, equivalent to requiring that the new representative of the defunct corporation be substituted by name.  If, notwithstanding the dissolution of a corporation, especially on the grounds of insolvency, as in the present case (a proceeding usually hostile to the managers of the corporation), it lay in the power of the agents or attorneys formerly employed by it to suffer recoveries against the corporation, which should be binding upon the receiver or other party appointed according to law to represent the interests of the mass of the creditors and of the stockholders, without affording such representative an opportunity to intervene, it is evident that gross abuses might be perpetrated.  In the present case, the attorneys seem to have done all they could honorably to protect the interests of the absent parties; but if, notwithstanding their declination to assist at the ceremony of rendering judgment against their deceased client, such a judgment should be enforced, it is not difficult to conceive how other attorneys similarly situated might facilitate recoveries which would entirely defeat the claims of just creditors, and deprive the new representative appointed in their behalf of the control over the affairs and litigations of the corporation which it was the intention of the law to accord to him.  In the case now before us the receiver declined to permit the former attorneys of the company to appear in the action when it came on for a new trial.  This they stated in open court.  The original judgment was in favor of the defendant. A new trial had been denied by the first tribunal to which the cause was submitted, but their decision had been reversed on error and a new trial granted.  There was a substantial controversy, in which it was the duty as well as the right of the receiver to represent the interests committed to him. That under such circumstances a judgment should be ren-

dered without making him a party to the action, or by some order of the court placing its defence under his control, is contrary to all our ideas of legal procedure. The judgment was, in fact, pronounced without the legal presence of the party entitled to defend, and should not be held to be binding upon him.

It is argued on behalf of the respondent, that it does not affirmatively appear that a proper order for the continuance of the action was not made. This is a voluntary submission of a controversy without action. The parties have agreed upon their facts, and we cannot suppose that so important a fact, if it existed, would have been omitted from the statement. From a full examination of the case we are satisfied that the question intended to be submitted to us is, whether the judgment was valid without such an order. That no substitution of the receiver as a party defendant was made is apparent, from the rendition of the judgment against the defendant corporation and not against the receiver.

Having come to the conclusion that the judgment is not valid against the receiver, we must consider the second question submitted, viz.: "Was there such a breach of warranty as to his interest in the property insured, on the part of the plaintiff, as to render said policy void?" It is stipulated in the submission that if the question be answered in the negative, judgment is to be rendered against the receiver for the sum of $3,000, with interest from the 5th of November, 1866.

The facts upon which this question arises are very concisely stated in the submission. The plaintiff effected a policy of insurance with the insurance company of which the appellant is receiver for $3,000, apportioned as follows: "$2,000 on his stone building, $800 on his steam engine and apparatus therein, and $200 on his household furniture, clothing and books stored therein."

Prior to issuing the policy the company required the plaintiff to answer, in writing, certain questions concerning said property and risk, which questions and answers were made a

warranty and condition of granting the policy, and which were in part as follows:

" Question 1. — Is it (meaning the property aforesaid) owned and operated by the applicant?

" Answer. — Yes.

" Question. — Is any other person interested in the property? If so, state the interest.

" Answer. — No.

" Question 31. — Incumbrance: Is there any on the property?

" Answer. — Held by contract."

At this time, and at the date of the fire, the plaintiff was in the full possession and absolute enjoyment of the property in question. He held the real estate, including the buildings, which he used for a manufactory, under contract of sale from the owners in fee, which provided for the delivery to him of a deed thereto on payment of $2,000, of which sum, $500, the amount due at that time, had been paid. Of the personal property he was absolute owner. The loss was total.

The receiver now contends that there was a breach of warranty, as to the interest of the plaintiff in the property insured, which rendered the policy void.

Taking the three answers together, although they are loose and not strictly accurate, we think they disclose that the insured held the property by contract, and that his ownership was of the character which results from such a holding, one familiar to insurance companies as well as to lawyers; and that if the company desired a more distinct specification of his title it was incumbent upon it to demand an explanation. By insuring on this statement they assumed to have knowledge of its meaning. The statement that the insured operated the property was true. The statement that he owned it, if unqualified by the subsequent statement that it was held by contract, would have been a warranty of absolute ownership. But the statement that it was held by contract did, we think, so far qualify the representation of ownership, as to preclude the insurer from asserting a warranty of absolute own-

ership.   The answer, that no other person was interested in the property insured, was in this view correct.   It does not appear that any other person was interested in the contract under which the plaintiff held, or in the personal property. The destruction of the building caused a loss to the plaintiff of its full value, for it did not relieve him from his obligation to pay the entire contract-price.   The vendor had no interest in the property, but merely a lien thereon, as security for the unpaid part of the contract-price.   The third answer did not assert that there was no incumbrance on the property insured. On the contrary, it disclosed that there was or might be a lien on the interest of the insured, as he held it by contract, which supposes that there was still something for him to perform before he would be entitled to hold it free of incumbrance. If the company desired to know the extent of the incumbrance it was its duty to inquire.   The question put to the insured called for no such information, but only whether there was any incumbrance on the property, to which he answered, that it was held by contract : an answer which imported that there was such an incumbrance as usually exists in such cases. We find no breach of warranty in respect to this question, for the answer was strictly true.   On the whole, we concur with the opinion of the Supreme Court of Ohio on the merits of the claim (21 Ohio St., 176, 180); and, therefore, decide the second question submitted to us in the negative.

This leads to a modification of the judgment of the Superior Court, so as to make it a judgment against the receiver for $3,000, with interest from the 5th of November, 1866, as stipulated in the submission, without costs in this court to either party.

All concur.

Judgment accordingly.