## SIGNAL GASOLINE CORPORATION v. UNITED STATES.

### No. 46.

District Court, S. D. California, Central Division.

July 31, 1942.

Joseph D. Peeler and Melvin D. Wilson (of Miller, Chevalier, Peeler & Wilson), both of Los Angeles, Cal., for plaintiff.

William Fleet Palmer, U. S. Atty., Edward H. Mitchell, Asst. U. S. Atty., James L. Crawford, Asst. U. S. Atty.; Armond Monroe Jewell, former Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action to recover interest allegedly overpaid, in the amounts of $3,421.-67 and $2,184.71, on Federal Corporate Income Taxes for the years 1927 and 1928 respectively, pursuant to 26 U.S.C.A. § 3772; Int.Rev.Code, § 3772.

The cause was submitted without trial and in conformity with a stipulation of facts by and between the litigants with the approval of the court. The issues are predicated on the following undisputed facts:

Plaintiff herein is represented by and is maintaining this suit through its statutory trustees by reason of its dissolution on December 12, 1928, as a corporate entity, by order of court. Prior to that time, it had been duly organized and existing as a California Corporation since February 11, 1924. On April 11, 1928, the plaintiff filed a return and paid its Federal Corporate Income Tax for the year 1927 as required by law. The amount paid is not in controversy. On the November, 1930, assessment list, the Commissioner of Internal Revenue declared a jeopardy assessment for additional Federal Corporate Income Tax for the year 1927, in the amount of $81,979.71, together with interest in the amount of $13,-211.08. Demand therefor was effected on December 1, 1930. On December 8, 1930, a deficiency letter was issued against the plaintiff advising it of the assessment.

Similarly, on May 14, 1928, the plaintiff filed its federal corporate income tax return for the period from January 1, 1928, to November 30, 1928. No tax was due thereon. Subsequently the Commissioner of Internal Revenue declared a jeopardy assessment on the March, 1931, assessment list for additional corporate income tax for the period above mentioned, i. e., from January 1, 1928, to November 30, 1928, in the amount of $84,225.13 together with interest there-

on in the amount of $9,990.49. Demand therefor was effected March 9, 1931. On March 30, 1931, a deficiency letter was issued against the plaintiff advising it of the assessment. From each of these jeopardy assessments, the plaintiff appealed to the Board of Tax Appeals and, as conditions precedent to such appeals, filed bonds in the amounts of $143,000 and $141,323.43 respectively, staying the collection of each of the jeopardy assessments, pending a review of the Commissioner's decision by the Board of Tax Appeals. On November 9, 1936, the Board of Tax Appeals entered orders sustaining the Commissioner's determination as follows: A deficiency of $59,573 representing the 1927 jeopardy assessment and a deficiency of $55,048.42 representing the jeopardy assessment for the period of January 1, 1928, to November 30, 1928. No specific finding of interest was entered on either account. Pursuant to the conclusions of the Board, the Commissioner, on January 11, 1937, issued notices and demands to the plaintiff for payment of tax, to-wit: $59,573 together with interest thereon at 6% per annum, from March 15, 1928, to December 1, 1930, in the amount of $9,600.23, which tax and interest were paid January 15, 1937; $55,048.42 together with interest thereon at 6% per annum, from March 15, 1929, to March 9, 1931, in the amount of $6,529.65, which tax and interest were paid January 15, 1937. On January 11, 1937, the Collector made a further demand upon the plaintiff for delinquency interest amounting to $25,361.67 representing interest at 6% per annum on $69,173.23 ($59,573.00 plus $9,-600.23) from the date of the first notice and demand (December 1, 1930), to the date of the second notice (January 11, 1937). Said interest of $25,361.67 was paid January 15, 1937. The total amount of interest paid by the plaintiff to the Collector of Internal Revenue for the year 1927 was $34,961.90, which amount equals the sums of $25,361.67 and $9,600.23, supra; whereas simple interest at 6% per annum on the deficiency of $59,573.00 from March 15, 1928, to January 11, 1937 would amount to only $31,540.23. The interest demanded by the Commissioner and paid by the plaintiff to the Collector of Internal Revenue allegedly exceeded the legal rate of interest of 6% by $3,421.67, viz., the difference between $34,961.90 and $31,-540.23.

On January 11, 1937, the Collector made a demand upon the plaintiff for delinquency interest of $21,496.90, computed at 6% per annum on $61,578.07 ($55,048.42 plus $6,-529.65) from the date of the first notice and demand (March 9, 1931) to the date of the second notice and demand (January 11, 1937). The total amount of interest paid by the plaintiff to the Collector for the period from January 1, 1928, to November 30, 1928, was $28,026.55, which amount equals interest on the sums of $55,048.42 and $6,529.65, supra; whereas simple interest of 6% per annum on the deficiency of $55,048.42 for the period involved would amount to only $25,841.84. The interest demanded by the Commissioner and paid by plaintiff allegedly exceeded the legal rate of interest of 6% by $2,184.71, viz., the difference between $28,026.55 and $25,841.84. Collection of both items of interest ($3,421.67 and $2,184.71) is being contested as erroneous and illegal. Formalities of payment and claim for refund were duly followed by the plaintiff and on July 13, 1938, said claims for refund were rejected. The following questions are propounded for determination:

1. Whether plaintiff, being a corporation dissolved in 1928 under the California law as it existed prior to 1929, had at the commencment of this action or now has any capacity to sue under the facts.

2. The legality of exacting from plaintiff the items of interest in controversy. Solution of the problems presented will be considered in the order enumerated. .

Rule 17 of the Federal Rules of Civil Procedure of this court, 28 U.S.C.A. following section 723c, provides: "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held; * * *." 2 Moore's Federal Practice, 2092, section 17.16. Elaboration upon the unequivocally expressed rule is unnecessary. Accordingly the laws of the State of California govern the plaintiff's capacity to sue. The generally accepted view of the status of a dissolved corporation is expressed in Crossman v. Vivienda Water Co., 150 Cal. 575, 89 P. 335. On page 580 of 150 Cal., on page 337 of 89 P., the court states that: "It is settled beyond question that, except as otherwise provided by statute, the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no

more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the text writers agree, and their statement is supported by an overwhelming weight of authority," and authorities cited herein. The United States Supreme Court sustains this rule in Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634, wherein it said: "It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect. (Citing cases) It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant. To allow actions to continue would be to continue the existence of the corporation pro hac vice. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being." However, in California this principle was modified, to the extent allowed by section 400 of the Civil Code of California, as amended by St.1921, p. 574, during the period in which the Signal Gasoline Corporation was dissolved in 1928. Section 400, Cal.Civ.Code, provided: "Unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full powers to settle the affairs of the corporation, collect and pay outstanding debts, sell the assets thereof in such manner as the court shall direct, * * *. Such trustees shall have authority to sue for and recover the debts and property of the corporation, and shall be jointly and severally personally liable to its creditors and stockholders * * *." Pursuant thereto, an allegation of the complaint (and the same is admitted by the answer herein) that "On December 12, 1928, plaintiff was dissolved by court order, and since then has been and now is acting through its statutory trustees." The caption of the complaint is also indicative of the complainant's status. In its brief the government intimates that: "We do not believe that the phrase in the title of the complaint describing the Signal Gasoline Corporation as 'a dissolved corporation, acting through its statutory trustees,' or the fact that the complaint was verified by the statutory trustees, can give exception to the rule that the Signal Gasoline Corporation now has no power to sue in the corporate name. It would do violence to reason to construe the complaint herein as an action brought in the names of the statutory trustees and not in the name of the dissolved Signal Gasoline Corporation." A determination of this issue may be accomplished by an examination of the several cases pertinent to the subject. Buzard v. Helvering, 64 App.D.C. 268, 77 F.2d 391, 392, involved, inter alia, the question of whether an appeal taken by the trustees in the name of a dissolved California corporation constituted an appeal by said trustees with the effect of suspending the statute of limitations on proceedings against the trustees to collect tax deficiencies. One of the grounds assigned as error was "that Navarro Lumber Company was totally dissolved in 1922 and did not execute or file the appeal to the Board in 1925, on which the Commissioner relies for an extension of the periods of limitation for assessments against that company." Following a statement of the general rule from Crossman v. Vivienda, supra, the court in the Buzard case, supra, further quotes therefrom by saying that: " 'There is no statute of this state that authorizes the commencement or continuance of an action against the corporation after its legal death. We have no statute similar to that of several states, providing that in the event of the dissolution of a corporation its existence shall be continued either indefinitely or for a specified time for the settlement of its affairs. Statutes similar to our section 400, Civ.Code, above quoted, do not have the effect of continuing the existence of the corporation as cestui que trust, or otherwise, so as to render it capable of defending actions in its corporate name. (citing authorities). If section 385, Code Civ.Proc., providing that an action does not abate by the

death or any disability of a party, if the cause of action survives, is applicable to the case of a corporation, it does not authorize the continuance of the action against the corporation itself, but allows the action to be continued only against the "representative or successor in interest," brought in on motion. McCulloch v. Norwood, 58 N.Y. 562, 568. See, also, Judson v. Love, 35 Cal. 463. There being no statute which can be held to modify the general rule, it would seem that the judgment in this case was as much of a nullity as if it had been given against a dead natural person, and that plaintiff's remedy, after the dissolution of this corporation was against the directors who continued such at the time of dissolution as trustees, and the stockholders. Sturges v. Vanderbilt, supra (73 N.Y. 384).'" In the principal case the petition for redetermination of the deficiencies was "'entitled, Appeal of Navarro Lumber Co.,'" but it was signed for the company by the three trustees, who, in the dissolution decree, were directed to wind up its affairs and distribute its assets. In taking the appeal, petitioners set out the authority on which they acted. They speak of themselves as the trustees of the lumber company "now in process of liquidation" and point to the statute of California for their authority to act. By reference to that statute (Civil Code, sec. 400, as amended by St.Cal.1921, c. 383, p. 574), we find that they have power to settle the affairs of the corporation, collect and pay outstanding debts, to sue and to be sued in relation to the debts and property of the corporation, and that they shall be jointly and severally liable to creditors to the extent of any property that shall come into their hands. It was in recognition of these duties and responsibilities that they filed the appeal. We think it cannot be urged that they were without authority, or the Board without jurisdiction. Indeed, we do not understand counsel to go that far, but rather, to insist that, because the appeal was taken in the name of the lumber company, and the trustees were not themselves substituted (after the passage of the 1926 act) formally by name in the place and stead of the corporation, the appeal was ineffective and the decision rendered thereon wholly void. Counsel say the three trustees compose "an indivisible fiduciary," a single taxpayer under present revenue acts, but that under the 1924 act in effect when the appeal was filed, the fiduciary entity which they composed could not invoke the jurisdiction of the Board of Tax Appeals by appealing from the Commissioner's notice. In the same breath they say the lumber company was dead and had no rights, so that the result of the situation when the appeal was taken was that there was nobody, natural or artificial, capable of contesting the Commissioner's determination, or availing of the provisions of law for a redetermination of the Commissioner's assessment. We have been cited no authority for this position, and we can find none; we should be slow to follow any which might point in that direction." That this contention was advanced by the plaintiff in Buzard v. Helvering, supra, and by the defendant here, cannot alter the rule nor the reason therefor. No substantial dissimilarity is perceivable between the two cases. In both instances, the caption on the pleadings was in the name of the dissolved corporation, with the exception that in the present case a designation of those through whom the Signal Gasoline Corporation is acting, is indicated, viz., its statutory trustees. With the same analogy the complaint "was signed for the company" by said trustees.

A brief comment on the authorities referred to in the government's brief in support of its position will expose their inapplicability. In Crossman v. Vivienda, cited above, the action was one in "debt commenced against a dissolved corporation and certain persons alleged to be stockholders. Summons was served on the president of the corporation; a demurrer was filed and overruled; and an answer was then filed by the stockholder defendants in which they denied liability on the part of the alleged corporation and also denied the existence of the corporation, alleging it had been voluntarily dissolved under the California statute. No pleading or answer was filed by the corporation, and a judgment against it was taken by default. On appeal, the judgment was set aside by the Supreme Court of California on the ground that it had been entered by the clerk without an order of court. Thereupon the plaintiff dismissed the action as to the individual defendants, and an order was made by the trial court appointing a referee to take an accounting between plaintiff and the corporation. On the basis of the referee's report, judgment was entered in favor of plaintiff against the corporation. Subsequently a proceeding was begun against the stockholders individually, alleging the recovery of the judgment against the corporation and its bankruptcy. The stock-

holders appeared and moved to set aside the judgment upon the ground that the court had no jurisdiction to enter the same for the reason that prior to the institution of the suit the corporation had been dissolved and had ceased to exist." This motion prevailed, predicated upon the general rule enunciated therein. A further examination of the Crossman case reveals that all of the proceedings therein "were had without the participation of any one purporting to represent the corporation, and without any notice to anyone." Brandon v. Umpqua Lumber, etc., Co., 166 Cal. 322, 136 P. 62, 63, involved a motion to dismiss an appeal from an action to quiet title to certain parcels of land against the defendant, a dissolved corporation. Denial of the motion was based solely upon the provisions of the Corporation License Act of 1906, sec. 10a, as amended in 1907, Stats.1907, p. 745. The court quoting from the case of Lowe v. Superior Court, 165 Cal. 708, 134 P. 190, states that: " 'We are of the opinion that section 10a of the act, as amended by the addition of the proviso, should be construed as providing that any action included within the meaning of the proviso shall not abate by reason of the forfeiture but may be continued and prosecuted in its corporate name to final judgment, the control and management of the action so far as the corporate interests are concerned being in the directors or managers in office at the time of the forfeiture; they being the trustees of the corporation and stockholders or members. While doubtless they may be properly substituted as parties defendant, such substitution is not essential to a continuance of the action, as we read the statute.' " As will be noted, the statute was the controlling factor. Although this court is bound by the decisions of the Ninth Circuit Court of Appeals, the case of Signal Oil & Gas Company v. United States, 125 F.2d 476, is not applicable. The Ninth Circuit Court rejected the defendant's contention "that certain assessments made in the name of the Signal Gasoline Corporation after its dissolution were, under the above referred to California law, void", principally because of statutory provisions cited therein. "The California rule that corporations which were dissolved prior to 1929 could not sue or be sued in their corporate capacity," was not questioned simply because the issues of the case did not require its application. The ruling in G. M. Standifer Construction Corp. v. Commissioner, 9 Cir., 78 F.2d 285, 286, is not inconsistent

with the views of this court. There the plaintiff's petition was dismissed in accordance with the common law rule observed in the preceding cases. The Oregon statute, Code 1930, § 25-221, under which petitioner attempted to maintain the action, provided a period of five years, after dissolution of a corporate entity, in which to exist as a corporate body "for the purpose of prosecuting or defending any actions, suits * * * by or against them, settling their business * * * but not for the purpose of continuing * * * business. * * *" A certificate of dissolution was obtained on August 30, 1927. This appeal was to review a decision of the Board of Tax Appeals which was rendered on June 7, 1934, after the expiration of the five year period. Judge Mathews, speaking for the court, declared: "The Oregon statute * * * does not provide for the continuance of suits pending by or against a dissolved corporation at the expiration of the 5-year extension of its corporate life, and the Supreme Court of Oregon, in construing this statute, has held that pending suits commenced within that period abate upon the expiration thereof. * * * Here, the 5-year period expired, the corporation became defunct, and the proceeding before the Board of Tax Appeals abated on August 30, 1932, 21 months before the Board rendered its decision. The petition filed in this court in the name of the defunct corporation presents nothing for review. The only thing we can do with such a petition is to dismiss it." No such circumscription was imposed by section 400 of the California Civil Code. The court is, therefore, of the opinion that this action was properly maintained by the trustees of the Signal Gasoline Corporation.

■ The absence of precise judicial precedent upon which this court can rely for guidance in determining the second question presented, renders it of primary importance. Consequently, statutory construction must finally dispose of the controversy. Inasmuch as the language of the 1926 and 1928 provisions of the Revenue Act is substantially the same, the pertinent sections of the Revenue Act of 1928 only will be referred to. The income tax statute authorizing jeopardy assessments without hearing unless the taxpayer gives bond has been held constitutional. Continental Products Co. v. Commissioner of Internal Revenue, 1 Cir., 1933, 66 F.2d 434, affirming 20 B.T.A. 818. Tit. 26 U.S.C.A. Int.Rev.Code, § 273 (f), provided that the stay of collection of the

amount assessed, by filing bond was "conditioned upon the payment of so much of the amount, the collection of which is stayed by the bond * * * together with interest thereon as provided in section 297." The basic problem then is the determination of the amount stayed by filing of the bond. Sec. 273 (a) provides: "If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess such deficiency (together with all interest, * * *) and notice and demand shall be made by the collector for the payment thereof." Although the deficiency upon which the jeopardy assessment, as originally declared, was erroneous, yet the amount involved became ascertainable by a subsequent decision of the Board. The deficiencies, so determined, were referable to the jeopardy assessments of 1930 and 1931. Thus, section 273 (a) became operative, and pursuant thereto interest at the rate of 6% per annum was added to and became a part of the amounts stayed by the bond filed according to section 273 (f) (viz., $69,173.23 and $61,578.07 respectively). The plaintiff's contention that the Board lacks jurisdiction to consider and did not enter a finding of interest is untenable. Assessment of interest was authorized by section 273 (a). Erroneous computation of the original tax deficiencies did not vary the effect of the amounts which should have been stayed. This was merely a matter of mathematical calculation. Section 273 (i) states: "When the petition has been filed with the Board and when the amount which should have been assessed has been determined by a decision of the Board which has become final, then any unpaid portion, the collection of which has been stayed by the bond, shall be collected as part of the tax upon notice and demand from the collector, * * *." Accordingly, subsequent to a final decision of the Board, together with notice and demand for payment, the collector was entitled to "any unpaid portion, the collection of which has been stayed by the bond * * *." Section 297, 26 U.S.C.A. Int. Rev.Code, with the interpretation of which this litigation is primarily concerned, becomes the final deciding factor. It declares: "In the case of the amount collected under section 273 (i), there shall be collected at the same time as such amount, and as a part of the tax, interest at the rate of 6 per centum per annum upon such amount from the date of the jeopardy notice and demand to the date of notice and demand under section 273 (i) * * *." Incorporation by reference of one section to another renders a comprehension thereof less confusing when viewed as a unity. Under the present facts, together with $69,173.23 and $61,578.07, collectible under 273 (i), as heretofore indicated, "there shall be collected at the same time as such amount, and as a part of the tax, interest at the rate of 6 per centum per annum upon such amount from the date of the jeopardy notice and demand * * *," which notice and demand were given November, 1930, and March, 1931, respectively. Therefore, the conclusion that the interest herein concerned was legal, is unavoidable.

Judgment for the defendant.